THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BOBBIE G. DAVIS, Defendant-Appellant.
Fourth District   No. 4—83—0647

Opinion filed April 4, 1984.

Daniel D. Yuhas and Jonathan Haile, both of State Appellate Defender's Office, of Springfield, for appellant.

John B. Leonard, State's Attorney, of Mt. Sterling (Robert J. Biderman, of State's Attorneys Appellate Service Commission, of counsel), for the Peo-

ple.

JUSTICE GREEN delivered the opinion of the court:

The principal issue in this case is whether the circuit court may properly revoke a sentence of probation conditioned on the defendant's securing inpatient treatment for drug and alcohol dependency problems, for the sole reason that there are no treatment facilities in the State which are willing to accept the defendant for inpatient treatment. We conclude that probation revocation is proper under these circumstances where the principal condition of probation has been frustrated. Accordingly, we affirm.

On June 21, 1983, the defendant was placed on 30 months' probation following a conviction of aggravated battery. On July 18, 1983, the defendant admitted that he violated the terms of his probation in that he committed the offenses of battery and obstruction of a peace officer in the performance of his official duties on June 24, 1983, and June 28, 1983, respectively. His probation was therefore revoked.

Following a hearing held on August 1, 1983, the defendant was, however, sentenced to a new 30-month period of probation. In addition to the usual terms, the probation order also provided that "[t]he defendant shall participate in, cooperate with and complete the program of rehabilitation prescribed by Gateway House, Springfield, Illinois, and *** defendant's performance shall be monitored through T.A.S.C., Inc., [Treatment Alternatives to Street Crime, Inc.] during his period of probation and T.A.S.C., Inc. shall provide the State's Attorney and Probation Office with regular reports, at least quarterly, of the defendant's performance." The defendant was further ordered to spend the first 120 days of his probation in the Schuyler County jail, subject to vacation of the balance of the 120-day term upon his entering the Gateway House program, and although not a condition of probation, "it [was the] court's considered recommendation that the defendant shall be granted no passes or liberty prior to six months from the commencement of his participation in the Gateway House Program."

On August 25, 1983, the court, on its own motion, after being advised that Gateway had determined that defendant did not qualify for its program of treatment and that defendant had been rejected from the Gateway facility (Kedzie House in Chicago) to which he had been sent, ordered that T.A.S.C., Inc., submit defendant to McFarland Zone Center in Springfield, "for inpatient evaluation and treatment as determined necessary and appropriate as a condition of probation ***." In a further order dated August 31, 1983, the court stated that it had been

advised that defendant "has been determined not serviceable" by both Gateway and McFarland, and on its own motion ordered the defendant to serve the balance of the 120-day sentence previously imposed as a condition of his probation.

On the same day, the State filed a petition for revocation of the defendant's probation, alleging that defendant violated the terms of his probation in that he "failed to participate and cooperate with the rehabilitation prescribed by Gateway House, Springfield, Illinois." A hearing was held on this petition on September 6, 1983. The State's sole witness was Michael S. Straton. Straton stated that he is area coordinator for T.A.S.C., Inc., which services the Eighth Judicial Circuit (which includes Brown County). T.A.S.C. had previously serviced clients for placement in the Gateway House facilities in both Chicago and Springfield. Straton had been involved with the treatment of defendant since May 1983, when defendant was placed at the Western Illinois Council on Alcoholism at Quincy. Eventually, following some evaluations concerning defendant's emotional wellbeing, he was found to be "no longer appropriate" for the facility and was discharged and returned to Mt. Sterling, his home town. The defendant was subsequently evaluated by the Brown County mental health center and found to be in need of "drug rehabilitation." The center recommended attendance at a program such as Gateway House.

Straton then attempted to obtain defendant's admission to the Gateway House facility in Chicago, known as Kedzie House. When Straton saw defendant following the defendant's rejection from the Kedzie House facility, defendant told Straton that (apparently during the interview process at Kedzie House) he made statements to the effect that "he did have a fear of getting in fights with people, that if he went to Gateway, somebody would say something to him—confront him in a verbal way that would make him angry" and spoke of "his fear that he would harm someone." Straton believed that the above statements were a material factor in defendant's rejection by the Gateway House program.

According to Straton, McFarland Zone Center declined to provide defendant with treatment because he "did not fall within a criteria of a health treatment, but that he needed some type of controlled environment to meet his needs." On the date of the hearing, T.A.S.C. discharged defendant by means of a "mutual discharge," which meant that T.A.S.C. had made unsuccessful efforts to place the defendant in the programs which it felt were attuned to his age, type of treatment required, and criminal history. T.A.S.C. had no alternative "but to say basically that we can no longer provide service for him." Straton re-

sponded in the negative to a question of the court as to whether Straton knew of any programs offered in Illinois which, in Straton's professional opinion, would provide services that would meet the defendant's needs. The defendant did not present any evidence.

At the conclusion of the hearing, the court revoked defendant's probation. Following a sentencing hearing held on the same day, the defendant was sentenced to three years' imprisonment.

The defendant was 20 years old at the time of his conviction of the underlying offense of aggravated battery. Prior to committing this offense, the defendant had been convicted of a number of other misdeeds, including battery, reckless driving, theft of property worth more than $150, and disorderly conduct.

■ The defendant first asserts that the trial court abused its discretion in revoking his probation because he engaged in no culpable or wilful misconduct during his final term of probation. In support of this assertion, the defendant relies on section 5—6—2(c) of the Unified Code of Corrections, which provides:

> "The court may at any time terminate probation or conditional discharge if warranted by the conduct of the offender and the ends of justice ***." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—6—2(c).)

The defendant's position is premised on the assumption that the above statutory language proscribes the revocation of probation in the absence of a wilful violation of the conditions of probation. This argument, however, fails to take into account the following statutory language relevant to probation revocation, also appearing in the Unified Code of Corrections:

> "Probation *** shall not be revoked for failure to comply with conditions of a sentence or supervision, which imposes financial obligations upon the offender unless such failure is due to his wilful refusal to pay." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—6—4(d).)

The above statutory provisions are obviously *in pari materia*, since they both relate to the circumstances under which probation may be revoked, and *in pari materia* statutes should be construed so as to give effect to all statutory provisions in order that no portions of the statutes are rendered inoperative, superfluous, or ineffective. (See *Gillespie v. City of Maroa* (1982), 104 Ill. App. 3d 874, 433 N.E.2d 688.) It follows that a construction of subsection 5—6—2(c) of the Unified Code of Corrections as mandating wilful misconduct on the part of a defendant as a prerequisite of probation revocation would be violative of the above tenets of statutory construction, because such an interpretation

of this subsection would render subsection 5—6—4(d) superfluous and unnecessary.

In support of his argument that the revocation of his probation was an abuse of the trial court's discretion, defendant also relies on *People v. Welch* (1979), 78 Ill. App. 3d 184, 397 N.E.2d 94, but that case is inapposite because unlike in the instant case, it had not been determined that there were no available treatment alternatives for the defendant's problems. Thus, none of the authorities cited by defendant provides support for his position that under Illinois law, one's probation may not be revoked in the absence of a wilful violation of the terms of probation.

While the probationer's culpability in violating the conditions of his or her probation ordinarily occupies a preeminent position among the factors considered in determining whether probation should be revoked, an approach to the probation revocation question which regards this factor as the sole touchstone of whether a probation violation has occurred ignores the fact that circumstances other than conduct chargeable to the probationer may frustrate the purposes of probation. The most important purpose of probation is, of course, to bring about the rehabilitation of the offender without sentencing him or her to prison. Also of importance is the protection of the public from the type of conduct on the part of the defendant which led to the defendant's being placed on probation. (See *People v. McClendon* (1970), 130 Ill. App. 2d 852, 265 N.E.2d 207.) In still other circumstances, probation may be imposed for reasons having little, if any, relationship to the goals of rehabilitating the offender or protecting the public from the type of crimes which the offender committed, such as where a defendant is placed on probation solely to enable him to continue support of his family, thereby preventing the members of his family from becoming public charges. See, *e.g., Genet v. United States* (10th Cir. 1967), 375 F.2d 960.

When the varied purposes of probation are fully considered, it becomes readily apparent that nonculpable conduct on the part of a probationer may frustrate the goals of a probationary sentence. For instance, criminal acts committed while a defendant is insane, although not providing a basis for the imposition of criminal sanctions, indicate nonfulfillment of both the rehabilitative purpose of probation and the objective of protecting the public from violent acts on the part of the probationer. (See *State v. O'Meal* (1977), 116 Ariz. 307, 569 P.2d 249; *State ex rel. Lyons v. Department of Health & Social Services* (Wis. App. 1981), 105 Wis. 2d 146, 312 N.W.2d 868.) Likewise, the inability of a probationer to support his family, even when due to circumstances

beyond the probationer's control, frustrates the fundamental purpose of the defendant's probation where that purpose is to prevent the defendant's family from becoming public charges. (See *Genet.*) Thus, although the defendant's fault is, in most cases, of great importance in determining whether the conditions of probation have been violated, circumstances beyond the defendant's control may provide an adequate basis for probation revocation where such circumstances frustrate the fundamental purpose or reason for the imposition of a sentence of probation. See generally Note, *Judicial Discretion & the Problem of the Mentally Ill Probation Violator*, 5 U.C.L.A.—Alaska L. Rev. 284 (1976).

■ Turning to the facts of the present case, it is apparent that the sole purpose of placing defendant on a new term of probation following revocation of the probation imposed on June 21, 1983, was to enable the defendant to obtain treatment for his drug and alcohol problem. In view of the refusal of both the Gateway program and the McFarland Zone Center to treat defendant (and his earlier dismissal from the Western Illinois Council on Alcoholism at Quincy) and Mr. Straton's statement that he knew of no programs in Illinois which provided the type of services that defendant required, it was apparent to the trial court that the purpose for which defendant's probation was granted would not be accomplished. Since defendant had not achieved and could not achieve the principal objective of his probation, the court did not abuse its discretion in revoking his probation. See *Humphrey v. State* (1981), 290 Md. 164, 170-75, 428 A.2d 440, 444-46 (Rodowsky, J., dissenting).

We note parenthetically that this issue would have been obviated had the court determined whether inpatient treatment for defendant's drug and alcohol abuse problem was feasible before sentencing defendant to a new term of probation. Commitment of a defendant for evaluation under the presentence commitment for study provision of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—3—3) provides a highly desirable alternative to the practice of placing a defendant on probation before it is known whether the defendant qualifies for participation in a substances abuse program which is a condition of probation.

■ The defendant's second allegation of error is that Mr. Straton was not properly qualified as an expert on the treatment alternatives for defendant's drug and alcohol problems which are available in Illinois and was not shown to have the necessary expertise to properly assess defendant's need for rehabilitation. An examination of the record of defendant's probation revocation hearing reveals that defend-

ant did not at any time object to the adequacy of the evidence as to Straton's qualifications and expertise. Thus, the trial court had no opportunity to rule on the adequacy of the foundation for Straton's expert testimony, and the defendant waived this question for purposes of review. *People v. Robertson* (1976), 43 Ill. App. 3d 143, 356 N.E.2d 1180; see *People v. Minnis* (1983), 118 Ill. App. 3d 345, 357, 455 N.E.2d 209, 218.

Generally an individual may testify as an expert if experience and qualifications give him knowledge which is not common to the world and his testimony will aid the trier of fact in reaching its determination. (*People v. Beil* (1979), 76 Ill. App. 3d 924, 395 N.E.2d 400.) We cannot say that the evidence presented as to Straton's qualifications and experience constituted such an insufficient foundation for his testimony that the revocation of defendant's probation on the basis of this testimony amounted to so substantial a violation of defendant's rights as would necessitate our ignoring the defendant's waiver of this issue in the circuit court. See *People v. Washington* (1981), 101 Ill. App. 3d 409, 428 N.E.2d 553.

■ The defendant finally asserts that we should reduce his sentence of three years' imprisonment for the offense of aggravated battery (which carries a maximum penalty of five years' imprisonment and a minimum of two years (Ill. Rev. Stat. 1981, ch. 38, pars. 12—4(e), 1005—8—1(6))) to two years. In support of this assertion, defendant points out that he did nothing during his final term of probation which would militate against a finding that his imprisonment was not necessary for the protection of the public or that probation would not deprecate the seriousness of his conduct. When the record is viewed as a whole, however, it is seen that defendant did commit the offenses of battery and obstruction of a peace officer while on probation for the underlying offense of aggravated battery, and that the court's sole purpose in placing defendant on probation anew was to enable him to obtain inpatient treatment for his drug and alcohol problems if such were available. In view of the number and seriousness of defendant's prior offenses, we cannot say that the trial court abused its discretion (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344) in imposing the sentence that it did.

Finding no reversible error, we affirm the revocation of defendant's probation and the sentence imposed.

Affirmed.

TRAPP and MILLER, JJ., concur.