Sullivan
No. 94-612

THE STATE OF NEW HAMPSHIRE

v.

RAZIAL KOCHVI

February 12, 1996

*Jeffrey R. Howard,* attorney general (*John C. Kissinger, Jr.,* assistant attorney general, on the brief and orally), for the State.

*Elliott & Jasper,* of Newport (*Anthony F. DiPadova, Jr.* on the brief and orally), for the defendant.

THAYER, J. The defendant, Razial Kochvi, appeals the Superior Court's (*Morrill,* J.) decision to revoke his probation and sentence him to two concurrent terms of three to ten years in prison. The superior court revoked the defendant's probation because it found that he violated a probation condition requiring him to obtain sexual offender treatment. On appeal, the defendant argues: (1) that he did not violate the terms of his probation; (2) that any violation was not willful; and (3) that he was not informed his probation could be revoked if he was unable to enroll in a treatment program. We affirm.

On October 9, 1992, the defendant pled guilty to two counts of felonious sexual assault, *see* RSA 632-A:3 (1986), and three misdemeanor counts of sexual assault, *see* RSA 632-A:4 (1986). In accordance with the negotiated plea, he was sentenced to twelve months imprisonment on the three misdemeanor charges and three to ten years on the felony charges. The sentence on the felony charges was deferred for a period of eighteen months following his release from incarceration. The defendant was also placed on probation for five years. The terms of the defendant's probation required that he "participate meaningfully and complete any counseling, treatment and educational programs as directed by the correctional authority or Probation/Parole Officer . . . [and] meaningfully and successfully participate in psychological/sexual offender programs as directed by Dr. Burt Hollenbeck and/or Dept of Corrections."

The defendant was evaluated by Dr. Hollenbeck during his incarceration on the misdemeanor charges. The evaluation was designed to determine whether the defendant would be allowed to enroll in Dr. Hollenbeck's outpatient treatment program when he was released from prison. After interviewing the defendant on two occasions, Dr. Hollenbeck concluded in February 1993 that the defendant was not appropriate for his program. In explaining his conclusion, he pointed to the defendant's dishonesty and lack of adequate impulse control as factors that would increase the defendant's risk of re-offending unless he was incarcerated.

The defendant was released from prison in early October 1993. Upon release, he signed a standard probation form prepared by the department of corrections which listed his probation conditions. Condition 12(c), differing slightly from the trial court's sentence, required that the defendant "participate and satisfactorily complete . . . sexual offender programs as directed by Dr. Hollenbeck and/or Dept. of Corrections."

In the weeks following his release, the defendant met regularly with his probation officer, Peter Danles, who told the defendant that he needed to enroll in a treatment program. For three months, however, the defendant could not engage in formal treatment because he was trying to transfer his case to Connecticut. Instead, he participated in generic counseling with doctors from West Central Services, Inc. (West Central Services). Only when it became clear in January 1994 that no transfer would occur did the defendant attempt to find an appropriate treatment program.

On February 24, 1994, doctors from West Central Services told Danles they would not accept the defendant into their sexual offender treatment program. Based on that information and on Dr. Hollenbeck's report, Danles filed a violation of probation report with the superior court. The report alleged that the defendant violated probation condition 12(c) by failing to enter a treatment program.

In a final effort to avoid revocation, the defendant hired doctors from West Central Services to formally evaluate him for admission to their sexual offender treatment program. Based on two evaluation sessions, the doctors concluded that the defendant was not an appropriate candidate for outpatient treatment. The doctors found, as Dr. Hollenbeck did earlier, that although the defendant admitted he was a sex offender who needed treatment, he was only "minimally truthful" about the details of his sexual abuse. They also explained that the defendant showed no empathy for his victims and suffered from weak impulse control.

On August 10, 1994, the Superior Court (*Morrill*, J.) held a hearing on the defendant's probation violation. At the conclusion of the hearing, the trial court found that the defendant violated the terms and conditions of his probation and therefore imposed the sentence that it originally deferred. The defendant appealed.

We give deference "to a trial court's decision in probation revocation proceedings and reverse only where there has been an abuse of discretion." *State v. Woveris*, 138 N.H. 33, 34, 635 A.2d 454, 455 (1993). In order to prevail on appeal, "the defendant must show that the evidence, viewed in the light most favorable to the State, fails to support the decision." *Id.*

The defendant argues first that he did not violate the conditions of his probation because he "meaningfully participated" in the treatment programs to which he was referred. The defendant argues that he cooperated with doctors by admitting to a twelve-year history of sexual abuse and by agreeing that he had a problem requiring treatment. He asserts that these admissions, combined with his participation in generic counseling, represent "meaningful participation" in accordance with the conditions of his release.

The defendant's probation conditions, however, required more than merely admitting the existence of a sexual disorder and engaging in generic treatment. Both the trial court's sentence and probation condition 12(c) required the defendant to participate in and complete any treatment program assigned by his probation officer. Following his release from prison, the defendant was told by his probation officer that he needed to get treatment in a sex offender program. Despite those instructions, however, the defendant did not complete any form of sex offender treatment. In light of those facts, we cannot conclude that the trial court abused its discretion in finding that the defendant failed to comply with the conditions of his probation.

The defendant next argues that even if he failed to comply with the conditions of his probation, the trial court erred in ordering revocation because his failure was not willful. More specifically, the defendant asserts that he was rejected from two possible treatment programs because he showed signs of weak impulse management, something he could not control. He argues, therefore, that his inability to secure treatment was not his fault and that his probation could not be revoked without some willful act on his part.

Even assuming that the defendant was not at fault in failing to obtain treatment, we still uphold the trial court's revocation decision. Other jurisdictions permit revocation when a defendant fails to complete a required sex offender treatment program for reasons beyond his control. *State ex rel. Nixon v. Campbell*, 906 S.W.2d 369, 372 (Mo. 1995) (en banc) (revocation permitted after giving defendant opportunity to withdraw plea when State closed its treatment program before defendant completed treatment); *State v. Bennett*, 666 P.2d 390, 392 (Wash. Ct. App. 1983); *cf. People v. Davis*, 462 N.E.2d 824, 828 (Ill. App. Ct. 1984) (revocation of probation permitted when defendant fails to obtain inpatient alcohol treatment). "[A]lthough the defendant's fault is, in most cases, of great importance in determining whether the conditions of probation have been violated, circumstances beyond the defendant's control may provide an adequate basis for probation revocation where such

circumstances frustrate the fundamental purpose . . . of probation." *Davis*, 462 N.E.2d at 828.

■ In this case, the defendant's lack of impulse control and his resulting inability to get treatment frustrated the dual functions of probation — rehabilitation of the defendant and protection of society. Therefore, the trial court's decision to revoke his probation was proper.

The defendant's reliance on *Bearden v. Georgia*, 461 U.S. 660 (1983), is misplaced. In that case, the United States Supreme Court held that a sentencing court may not revoke a defendant's probation on the ground that he failed to pay a court-ordered fine unless it first determines that his failure to pay was willful. *Id.* at 668-69. It explained: "[I]f the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation . . . without considering whether adequate alternative methods of punishing the defendant are available." *Id.* (footnote omitted). The defendant argues that *Bearden* should control the result in this case because he did not willfully violate the conditions of his probation.

■ In our view, however, a more careful reading of *Bearden* provides support for the trial court's decision to revoke the defendant's probation. The Court in *Bearden* explicitly stated:

> We do not suggest that, in other contexts, the probationer's lack of fault in violating a term of probation would necessarily prevent a court from revoking probation. For instance, it may indeed be reckless for a court to permit a person convicted of driving while intoxicated to remain on probation once it becomes evident that efforts at controlling his chronic drunken driving have failed. . . . In contrast to a condition like chronic drunken driving . . ., the condition at issue here — indigency — is itself no threat to the safety or welfare of society.

*Id.* at 668 n.9. Applied here, *Bearden* suggests that even if the defendant was not at fault in failing to secure treatment, his probation could still be revoked because, as an untreated sexual offender, he failed to carry out the conditions of his probation and represents a threat to society.

■ Finally, the defendant argues that his sentence did not inform him that rejection from sexual offender treatment programs, even for reasons beyond his control, could result in revocation of his probation. As a result, he asserts that his sentence violated our

well-settled rule that "a defendant . . . must know in plain and certain terms what punishment has been exacted by the court." *Stapleford v. Perrin*, 122 N.H. 1083, 1087, 453 A.2d 1304, 1306 (1982). We disagree.

Nothing in the defendant's sentence implied that he would be accepted into a treatment program, even if he was willing to cooperate with doctors. On the contrary, the condition that he "participate and satisfactorily complete" any treatment prescribed by his probation officer implied that the defendant had to be accepted into a program in order to comply with his probation requirements. Therefore, he was on notice that if he failed to gain entry into a treatment program he would violate the terms of his release. *Cf. United States v. Gallo*, 20 F.3d 7, 12 (1st Cir. 1994) ("the fair warning doctrine does not provide a safe harbor for probationers who choose to ignore the obvious"). Accordingly, we hold that the defendant knew what punishment was exacted by the court.

*Affirmed.*

BRODERICK, J., did not sit; the others concurred.