No. 98-728

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 240

296 Mont. 258

993 P.2d 1

STATE OF MONTANA,

Plaintiff and Respondent,

v.

MELVIN WARREN WILLIAMS,

Defendant and Appellant.

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

The Honorable Katherine R. Curtis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Robert B. Allison, Attorney at Law; Kalispell, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Tammy K. Plubell,

Assistant Attorney General; Helena, Montana

Thomas J. Esch, Flathead County Attorney; Ed Corrigan,

Deputy County Attorney; Kalispell, Montana

Submitted on Briefs: June 10, 1999

Decided: October 14, 1999

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶ **Melvin Warren Williams appeals from an order of the Eleventh Judicial District Court, Flathead County, dated September 22, 1998, revoking his suspended sentence. We affirm.**

¶ **Williams' appeal raises the following issue:**

¶ **Whether the District Court abused its discretion by revoking a suspended sentence**

that was conditioned on the completion of a prerelease center program and a sexual offender treatment program because the Defendant was unable to gain admission to those programs?

## FACTUAL BACKGROUND

¶ On March 25, 1998, Williams entered into a plea agreement with the State. Pursuant to that agreement, Williams agreed to enter a plea of guilty to sexual intercourse without consent and to move to dismiss his appeal of a youth court transfer order which transferred jurisdiction of his case to district court. In exchange, the State agreed to recommend a 5-year suspended sentence to the Department of Corrections, followed by a 15-year suspended sentence to the Montana State Prison subject to Williams' completion of an approved sexual offender treatment program, abstinence from alcohol and illegal drugs, and compliance with all the standard rules of probation.

¶ On April 9, 1998, Williams pled guilty to the charge of sexual intercourse without consent in violation of § 45-5-503, MCA (1997). On May 20, 1998, DeAnn Carmer, an Adult Probation and Parole Officer for the Department of Corrections, completed her Presentence Investigation of Williams. The Presentence Investigation included a Sex Offender Amenability Evaluation, performed by the Northwest Family Recovery Program, which concluded that Williams was "a moderate to high risk to reoffend." On the basis of her investigation, Ms. Carmer recommended that Williams be placed in the Billings Prerelease Center and initiated the screening process.

¶ The court entered its Judgment and Sentence on June 9, 1998. The District Court committed Williams to the Department of Corrections for 5 years and sentenced Williams to 15 years at the Montana State Prison, both terms suspended. The court also imposed, in relevant part, the following conditions:

As conditions of probation, the Defendant must comply with the following:

2) He must complete the Billings or Great Falls Pre-Release Center. He is to remain in the custody of the Flathead County Detention Center until his placement at a pre-release center can be arranged.

. . . .

No

5) He must undergo a sexual offender treatment evaluation, complete a sexual offender treatment program deemed appropriate by his probation officer, and follow all resulting recommendations to the satisfaction of his probation officer and treatment provider.

¶ Williams remained in custody pending the outcome of the prerelease centers' admissions evaluations because he had no appropriate place to stay. However, the Billings and Great Falls Prerelease Centers declined to accept Williams. On June 19, 1998, the State filed a petition to revoke Williams' suspended sentence because he was unable to meet the conditions of suspension. On July 9, 1998, the District Court held an initial hearing on the State's petition to revoke and concluded that it needed to hear from Ms. Carmer, Williams' probation officer, concerning why both prerelease programs rejected Williams. A subsequent hearing was set for July 16, 1998. At that hearing, Williams requested postponing a final determination on the State's petition in order to allow him to be evaluated by a psychiatrist to determine whether there were medications that could be prescribed for Williams which would enable him to qualify for one of the prerelease programs.

¶ Dr. Victor Houser completed a psychiatric evaluation of Williams on September 13, 1998. Dr. Houser concluded that, "Untreated and released (now or ten years from now) he would almost certainly reoffend, probably another young child." Further, he expressed his hope that the court send Williams to a treatment facility where he could receive "the appropriate medical and psychiatric care along with the prescribed sex offender treatment."

¶ On September 17, 1998, the District Court conducted a final hearing on the State's petition for revocation. At this hearing, Williams denied that he had violated the conditions of his suspended sentence. Ms. Carmer, Williams' probation officer, testified that she had exhausted all possible combinations and that there were no programs in which Williams could be placed for supervision and treatment. She further testified that the prerelease centers had refused to accept Williams because of the lack of social skills, immaturity, and acting out behavior he displayed while residing at a youth home during the completion of his Sex Offender Amenability Evaluation.

¶ On September 23, 1998, the District Court entered its Order of Revocation. The court found that Williams had been rejected by the Billings and Great Falls Prerelease Centers, as well as the Northwest Family Recovery Program. The court also found that Williams was not a suitable candidate for probation or the Intensive Supervised Probation Program because Williams was unemployed, did not have a place to live, lacked the social skills necessary to live independently, and had been assessed as a moderate to high risk to reoffend. Accordingly, the court found Williams to be in violation of the conditions of his probation and revoked his suspended sentence. The court sentenced Williams to a term of 5 years in the custody of the Department of Corrections, with credit for time served, and, upon his discharge from the department, to a term of 15 years at the Montana State Prison, with 12 years suspended. The court declared that Williams would be ineligible for parole until he satisfactorily completed Phase I of the prison's sex offender treatment program. Williams appeals.

## STANDARD OF REVIEW

¶ The standard for revoking a suspended sentence requires that the District Court be reasonably satisfied that the conduct of the probationer has not been what he agreed it would be if he were given liberty. *State v. Lindeman* (1997), 285 Mont. 292, 302, 948 P.2d 221, 228 (citing *State v. Butler* (1995), 272 Mont. 286, 289, 900 P.2d 908, 910). We review a district court's decision to revoke a suspended sentence to determine whether the court abused its discretion and whether the court's decision was supported by a preponderance of the evidence in favor of the state. *State v. Nelson*, 1998 MT 227, ¶ 16, 291 Mont. 15, ¶ 16, 966 P.2d 133, ¶ 16 (citing *Lindeman*, 285 Mont. at 302, 948 P.2d at 228).

## DISCUSSION

¶ Whether the District Court abused its discretion by revoking a suspended sentence that was conditioned on the completion of a prerelease center program and a sexual offender treatment program because the defendant was unable to gain admission to those programs?

¶ The State filed a Petition for Revocation of Suspended Sentence on June 19, 1998. In this Petition, the State alleged that:

The Defendant's probation officer, DeAnn Carmer, now reports that the Billings and Great Falls Pre-Release Centers have refused to accept the Defendant for placement at their facilities. She further reports that he is not suitable for Intensive Supervised Probation given his lack of social skills, unemployment, lack of appropriate residence, and the Northwest Family Recovery Program's conclusion that he is not amenable for out-patient sex offender treatment.

The State requested that the court schedule a hearing to determine whether Williams' suspended sentence should be revoked. The District Court held a hearing on September 17, 1998, at the conclusion of which, it granted the State's petition. The court found Williams to be in violation of the conditions of his probation and revoked his suspended sentence.

¶ **Williams argues that the District Court's revocation of his suspended sentence was erroneous because the State's petition did not allege a violation of the conditions of his suspended sentence. Rather, Williams contends that the State only alleged that the Department of Corrections declined to accept him at one of its prerelease centers. He argues that, as a result the Department's rejection, the condition requiring him to complete a prerelease center program became impossible due to no wrongdoing on his part. Following our decision in** *Lopez v. Crist* **(1978), 176 Mont. 352, 578 P.2d 312, Williams argues that the Department of Corrections should be required "to find appropriate and comparable treatment that does not entail incarceration at the Montana State Prison."**

¶ **Section 46-18-203, MCA (1997), governs a district court's revocation of a suspended or deferred sentence. It states, in relevant part, that:**

(7) If the court finds that the defendant has violated the terms and conditions of a suspended or deferred sentence, the court may:

. . . .

(c) revoke the suspension of sentence and require the defendant to serve either the sentence imposed or any lesser sentence; . . . .

¶ **Clearly, § 46-18-203, MCA (1997), required the District Court find Williams violated the terms and conditions of his suspended sentence before revoking the suspension of his sentence. Williams does not contend that completion of a prerelease program was not one of the conditions of his sentence nor does he contend that he**

completed a prerelease program. Rather, Williams contends that he did not violate this condition because it became impossible to fulfill due to the decisions of the Billings and Great Falls Prerelease Centers and not due to any wrongdoing on his part.

¶ We conclude that the District Court did not abuse its discretion by determining that the conduct of Williams was not "what he agreed it would be if he were given liberty." *Lindeman*, 285 Mont. at 302, 948 P.2d at 228. First, we note that § 46-18-203, MCA (1997), does not expressly require the court to determine whether a defendant has willfully violated the terms of the defendant's suspended sentence before the court can revoke a suspended sentence. We have never directly confronted the issue of whether a defendant's violation of the conditions of a suspended sentence must be willful. However, because Williams' inability to secure treatment frustrated the purpose of probation, namely, his rehabilitation, we agree with the District Court that revoking his suspended sentence and requiring him to participate in the Montana State Prison sexual offender treatment program best serves the purpose of Williams' rehabilitation.

¶ Courts in other jurisdictions have affirmed revocations based on violations beyond the defendant's control when they relate to the defendant's potential for rehabilitation. *State v. Kochvi* (N.H. 1996), 671 A.2d 115; *State v. Garcia* (Idaho Ct. App. 1993), 860 P.2d 677; *Davis*, 462 N.E.2d 824; *State v. Bennett* (Wash. Ct. App. 1983), 666 P.2d 390. In *Kochvi*, the New Hampshire Supreme Court affirmed the revocation of Kochvi's sentence even though Kochvi's failure to gain admission to a sexual offender treatment program was beyond his control. *Kochvi*, 671 A.2d at 118. Kochvi had pled guilty to two felony counts and three misdemeanor counts of sexual assault. The sentence on the felony charges was deferred, and after serving a 12-month sentence for the misdemeanor charges, Kochvi was placed on probation. The terms of Kochvi's deferred sentence and probation required him to participate in and complete any treatment program assigned by his probation officer. However, Kochvi was unable to enroll in a treatment program because the program administrators concluded that he was not an appropriate candidate for their program. Based on this information, the trial court found that the defendant had violated the terms of his probation and revoked probation, imposing the sentence that it had originally deferred.

¶ On appeal, Kochvi argued that the trial court erred in ordering revocation because

his failure to secure admission into a treatment program was not his fault. In particular, he asserted that he was rejected from two possible treatment programs because he showed signs of weak impulse management, something he could not control. Kochvi also argued that his sentence did not inform him that rejection from sexual offender treatment programs, for reasons beyond his control, could result in revocation of his probation.

¶ The New Hampshire Supreme Court affirmed the trial court's revocation of Kochvi's probation, observing that the terms of Kochvi's sentence required him to participate in and complete a treatment program and Kochvi failed to comply with this condition. *Kochvi*, 671 A.2d at 117. The court concluded that the trial court did not abuse its discretion even if Kochvi was not at fault for not complying with the terms of his probation. The court noted that Kochvi's lack of impulse control and his resulting inability to enroll in a treatment program "frustrated the dual functions of probation–rehabilitation of the defendant and protection of society." *Kochvi*, 671 A.2d at 118. Lastly, the court concluded that Kochvi was on notice that if he failed to gain entry into a treatment program he would violate the terms of his probation. The court observed that nothing in Kochvi's sentence implied that he would be accepted into a treatment program. On the contrary, the condition that Kochvi participate in and complete a treatment program implied that he had to be accepted into a program in order to comply with the terms of his probation. *Kochvi*, 671 A.2d at 118.

¶ We agree with the New Hampshire Supreme Court's reasoning in *Kochvi* to the extent that it held that a trial court does not abuse its discretion in revoking a defendant's suspended sentence when it finds, by a preponderance of the evidence, that a condition of suspension would not be met and continued suspension of the defendant's sentence would frustrate the purposes of suspension, namely, the defendant's rehabilitation. *See Kochvi*, 671 A.2d at 118. As we have stated on previous occasions:

The inquiry at any probation revocation hearing is whether the purposes of rehabilitation are being achieved, and whether, by virtue of subsequent criminal conduct or evidence that the defendant's behavior was not in compliance with the rules and objectives of his probation, the purposes of probation are best served by continued liberty or by incarceration.

*Lindeman*, 285 Mont. at 308, 948 P.2d at 231 (quoting *State v. Robinson* (1980), 190 Mont. 145, 148, 619 P.2d 813, 815).

¶ Because sexual offender treatment was not available to Williams as required by the terms of his suspended sentence, the District Court could have been reasonably satisfied that Williams' conduct had not been what he agreed it would be if he were given liberty. *See Lindeman*, 285 Mont. at 302, 948 P.2d at 228. Furthermore, the purpose of Williams' probation, namely his rehabilitation, was not being achieved because he was not being treated in a sexual offender program. *See Lindeman*, 285 Mont. at 308, 948 P.2d at 231. The District Court also found that Williams was not a suitable candidate for other programs such as the Intensive Supervised Probation program because he was unemployed, did not have a place to live, appeared to lack the social skills necessary to live independently, and was assessed as "a high to moderate risk to offend." Thus the court found that it had no option but to revoke Williams' suspended sentence and sentence him to incarceration at the Montana State Prison where Williams could be treated in the prison's sex offender treatment program. We conclude that, given these facts, the District Court did not abuse its discretion by revoking Williams' suspended sentence.

¶ Lastly, we think that Williams' reliance on *Lopez* to assert that the Department of Corrections has an affirmative duty to find an appropriate treatment program that does not involve incarceration is misplaced. The precise issue in *Lopez* was whether a parolee who, after a full revocation hearing, has been found by the Board of Pardons not to have violated his parole may nevertheless be confined pending his submission of an acceptable new parole plan. *Lopez*, 176 Mont. at 355. We held that due process placed an affirmative duty on the parole authorities to aid Lopez in developing an acceptable plan and we ordered Lopez's release. *Lopez*, 176 Mont. at 355-56. The facts of Williams' case are substantially different. Unlike Lopez, Williams is not being held as the result of an erroneous decision that he violated the terms of his parole. Instead, Williams remained in custody after the suspension of his sentence and pending his acceptance into one of the prerelease centers because he was without an appropriate place to stay. Once the prerelease centers refused to accept Williams, his suspended sentence was revoked. We refuse to extend *Lopez* to the facts of this case.

¶ As a condition of Williams' probation, Williams was required to complete a prerelease center program as well as sexual offender treatment. Williams has not complied with those conditions. The purpose of Williams' suspended sentence was frustrated because he was unable to comply with the conditions of his suspension. Accordingly, we conclude that the District Court did not abuse its discretion by revoking Williams' suspended sentence.

¶ We affirm the judgment of the District Court.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

**/S/ W. WILLIAM LEAPHART**

**/S/ JAMES C. NELSON**

**/S/ TERRY N. TRIEWEILER**

**/S/ WILLIAM E. HUNT, SR.**

**/S/ KARLA M. GRAY**