No. 02-382

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 138

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

MICHEAL JOHN DRUBE,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Twelfth Judicial District,
                      In and for the County of Chouteau, Cause No. DC-98-08
                      The Honorable John Warner, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                Carl White, Attorney at Law, Havre, Montana

        For Respondent:

                Hon. Mike McGrath, Attorney General; Tammy K. Plubell,
                Assistant Attorney General, Helena, Montana

                Allin Cheetham, Chouteau County, Fort Benton, Montana


                        Submitted on Briefs:  January 23, 2003

                                Decided:  May 13, 2003

Filed:

                 _____
                              Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Micheal John Drube (Drube) appeals from the order entered by the Twelfth Judicial District Court, Chouteau County, revoking the sentence imposed for his conviction for sexual intercourse without consent. We affirm.

¶2 We rephrase the issues as follows:

¶3 1. Did the District Court abuse its discretion in revoking Drube's sentence?

¶4 2. Did the District Court err in sentencing Drube?

BACKGROUND

¶5 In 1998, Drube pleaded guilty to the felony offense of sexual intercourse without consent. Drube was sentenced to the Montana Department of Corrections (DOC) for five years, to be followed by a suspended sentence of seven years to the Montana State Prison (MSP). This Court's Sentence Review Division (SRD) subsequently amended the sentence to a three-year commitment to the DOC, followed by a nine-year suspended sentence to the MSP. The amended sentence also included the conditions that Drube complete phases I, II and III of the sexual offender treatment program at a facility no less secure than a prerelease center during the three-year commitment to the DOC, and follow an aftercare program during the entirety of the suspended portion of his sentence.

¶6 In May of 2001, the State of Montana (State) petitioned the District Court to revoke the suspended portion of Drube's sentence based on the allegation that Drube was due to discharge his three-year commitment to the DOC and had failed to complete all three phases of the sexual offender treatment program. The District Court held a hearing on the

2

revocation petition, Drube admitted the allegation and the court revoked his suspended sentence. The court sentenced Drube to a six-month commitment to the DOC, followed by a suspended sentence of eight years and six months to the MSP. The sentence included the condition that Drube enroll in, and successfully complete, an aftercare sexual offender treatment program during the suspended portion of the sentence.

¶7 In February of 2002, the State again petitioned the District Court to revoke the suspended portion of Drube's sentence based on an allegation that Drube had been terminated from the outpatient sexual offender treatment program he had been attending for failure to follow the program's rules. After a hearing on the petition, the District Court revoked Drube's suspended sentence and resentenced him to the nine-year term originally imposed by the SRD, with credit for time served. In its written order dated May 13, 2002, the court specified that the first five years of the sentence would be a commitment to the DOC, with the remainder of the sentence to be served at the MSP. The court suspended the MSP portion of the sentence with a variety of conditions, including that Drube

> must complete Phases I-III of the Sex Offender Program at a facility no less secure than a pre-release center. [Drube] also needs to be in an aftercare program during the entire suspended sentence. An [intensive supervision] program of the [DOC] shall be considered as secure or more secure than a pre-release center.

Drube appeals.

## DISCUSSION

¶8 1. Did the District Court abuse its discretion in revoking Drube's sentence?

3

¶9      We review a district court's decision to revoke a defendant's suspended sentence to determine whether the court abused its discretion.  State v. Williams, 1999 MT 240, ¶ 11, 296 Mont. 258, ¶ 11, 993 P.2d 1, ¶ 11.  In revoking a suspended sentence, the district court must be reasonably satisfied that the defendant's conduct "has not been what he agreed it would be if he were given liberty," and this determination must be supported by a preponderance of the evidence in favor of the State.  Williams, ¶ 11 (citations omitted).

¶10     Drube argues that the District Court abused its discretion in revoking his suspended sentence without giving him the opportunity to locate and enroll in an alternative sexual offender treatment program.  He asserts that, according to the express terms of his suspended sentence, he would be in compliance with the conditions set forth by the District Court as long as he completed his sexual offender treatment at any time during the term of his suspended sentence.  Consequently, according to Drube, his termination from the sexual offender program in which he was participating did not give the District Court immediate cause to revoke his sentence and he should have been given the opportunity to enroll in another program.

¶11     A district court may revoke a defendant's suspended sentence upon finding that the defendant has violated the terms and conditions of the sentence.  Section 46-18-203(7)(a), MCA.  The specific condition of Drube's sentence at issue here provided that Drube

> shall enroll in and successfully complete an after care sex offender treatment plan during the term of the suspended sentence.  Failure to so enroll and complete shall be a violation of the terms of the suspended sentence and is necessary to protect the public from the predatory conduct of the defendant.

4

Drube does not dispute that, at the time the State filed the revocation petition, he had not successfully completed an aftercare treatment program because he was terminated from the program in which he was participating. Nor does he dispute that, at that time, he was not enrolled in an aftercare treatment program. Thus, at the time the State filed its revocation petition, Drube was in violation of the conditions of his suspended sentence because he neither had completed an aftercare sexual offender treatment program nor was enrolled in such a program. Consequently, § 46-18-203(7)(a), MCA, authorized the District Court to revoke Drube's suspended sentence.

¶12 Moreover, the District Court expressly stated, both at the close of the revocation hearing and in its order revoking Drube's sentence, that Drube was unwilling to cooperate with the treatment programs and, in the interest of protecting the public, Drube required a more secure or structured setting in which to complete treatment. These findings were supported by testimony from Drube's treatment counselor that Drube did not comply with program rules, did not appear to be focused on his treatment program, was not ready to live on his own in a community while attending treatment and was unlikely to be accepted into an alternative treatment program. Based on these findings, it was reasonable for the court to have determined that Drube's termination from his treatment program and his inability to comply with program requirements outside of a structured setting frustrated the rehabilitative purposes of his suspended sentence, and that his conduct was not "what he agreed it would be if he were given liberty." See, e.g., Williams, ¶ 17.

¶13    We hold that the District Court did not abuse its discretion in revoking Drube's sentence.

¶14    2.  Did the District Court err in sentencing Drube?

¶15    As stated above, after revoking Drube's suspended sentence, the District Court sentenced him to a nine-year term, specifying that the first five years of the sentence would be a commitment to the DOC, with the remainder of the sentence to be served at the MSP. The court ordered that execution of the MSP portion of the sentence be suspended as long as Drube followed the various conditions set forth.  Drube argues that the District Court erred in sentencing him because it placed a condition on his sentence which was impossible for him to fulfill and, in its written revocation and sentencing order, the court placed conditions on his suspended sentence which it did not enunciate at the hearing.  We review a sentence in a criminal case for legality only and our review is confined to determining whether the sentence is within the parameters of the sentencing statute.  State v. Muhammad, 2002 MT 47, ¶ 18, 309 Mont. 1, ¶ 18, 43 P.3d 318, ¶ 18.

¶16    Drube first contends that the District Court placed an impossible condition on his suspended sentence by requiring that he complete all three phases of the sexual offender treatment program at a facility no less secure than a prerelease center.  He points out that, in the court's order in June of 2001 revoking his previous suspended sentence, the court found that phase III of the sexual offender treatment program "was an aftercare program that would last for many years and which [Drube] could complete in custody only by remaining in custody for the entire term of his sentence."  Drube contends that, in making this finding,

6

the court essentially determined that it was impossible to complete phase III as part of a suspended sentence and, consequently, the court erred by requiring him do so in its May of 2002 order.

¶17 The District Court's order in June of 2001 revoked Drube's prior suspended sentence because he was due to discharge the portion of his sentence committing him to the DOC and had not completed phase III of his sexual offender treatment program. The court's statement that Drube could not complete phase III while in custody was directly related to the fact that he was about to discharge his commitment to the DOC and, thus, would no longer be "in the custody" of the DOC. In its order in May of 2002, the District Court resentenced Drube to a five-year commitment to the DOC, during which time he was to complete the three phases of the sexual offender treatment program. Drube presents nothing establishing that it will be impossible to complete this requirement within the reinstated five-year commitment to the DOC. We conclude, therefore, that Drube has failed to establish that the District Court imposed an impossible condition on his suspended sentence.

¶18 Drube also argues that the District Court erred by including conditions on his suspended sentence in its written order which it did not include in its oral pronouncement of sentence at the revocation hearing. At the close of the revocation hearing, the District Court stated orally that Drube was sentenced to a five-year commitment to the DOC, followed by a suspended sentence to the MSP. The court did not expressly attach any conditions to the suspended sentence. In its May of 2002 written order, however, the court suspended Drube's sentence upon eight conditions. Drube cites State v. Lane, 1998 MT 76,

7

288 Mont. 286, 957 P.2d 9, for the proposition that, where the oral pronouncement of sentence differs from the written sentencing order the oral pronouncement controls and asserts, on that basis, that the eight conditions of his suspended sentence must be stricken from his sentence.

¶19 Drube is correct that, generally, if the written judgment differs from the oral pronouncement of sentence, the oral pronouncement controls. See Lane, ¶ 40. However, we have since clarified that the general rule of Lane is not absolute, but must be applied in a principled manner depending on the circumstances of the case. State v. Johnson, 2000 MT 290, ¶ 20, 302 Mont. 265, ¶ 20, 14 P.3d 480, ¶ 20. Thus, when determining whether a subsequent written sentencing order is unlawful because it contains conditions not enunciated orally, we must determine

> first, whether the defendant was afforded the opportunity to respond to its inclusion upon sufficient notice at sentencing, and second, whether that portion of the written judgment substantively increases one of two things: (1) the defendant's loss of liberty; and (2) the defendant's sacrifice of property.

Johnson, ¶ 24.

¶20 Here, Drube concedes that all of the conditions in the District Court's 2002 written revocation and sentencing order were contained in either his original sentence or the 2001 revocation and sentencing order. Furthermore, the record reflects that Drube was present at both his original sentencing hearing and the hearing on the 2001 revocation petition, and was given the opportunity at those times to respond to the conditions the court placed on his sentences. The conditions in the 2002 revocation and sentencing order were not new or unknown to Drube. Finally, Drube presents no argument that imposition of the eight

8

conditions substantively increases either his loss of liberty or sacrifice of property. We conclude, therefore, that the written 2002 revocation and sentencing order is not rendered unlawful by the District Court's addition of conditions which it did not impose orally at the sentencing hearing.

¶21    We hold that the District Court did not err in sentencing Drube.

¶22    Affirmed.

/S/ KARLA M. GRAY


We concur:

/S/ JIM REGNIER
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE