No. 99-389

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 290

302 Mont. 265

14 P.3d 480

STATE OF MONTANA,

Plaintiff and Respondent,

v.

ELIZABETH S. JOHNSON,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Edmund F. Sheehy, Jr., Cannon & Sheehy, Helena, Montana

For Respondent:

Joseph P. Mazurek, Montana Attorney General, Pamela P. Collins, Assistant Attorney General, Helena, Montana; Fred R. Van Valkenburg, Missoula County Attorney, Missoula, Montana

Submitted on Briefs: December 29, 1999
Decided: November 16, 2000

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Elizabeth S. Johnson (Johnson) appeals from an April 5, 1999 Judgment entered by the Fourth Judicial District Court, Missoula County, sentencing her to ten years with five suspended for issuing bad checks as part of a common scheme. Johnson claims that certain provisions in the written judgment were not enumerated by the court at her August 19, 1998 sentencing, and are therefore unlawful pursuant to this Court's decision in *State v. Lane*, 1998 MT 76, 288 Mont. 286, 957 P.2d 9.

¶2 We agree in part, and reverse and remand for further proceedings.

¶3 Johnson raises one issue--the legality of certain provisions in the District Court's written sentence--which can be set forth as follows:

Did the District Court err when it included conditions in its written judgment that it did not impose in open court, thereby rendering portions of the written judgment unlawful?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Johnson was charged by information on March 3, 1997, for issuing bad checks totaling $22,740.67 as part of a common scheme in violation of § 45-6-316, MCA. Johnson would eventually plead guilty. At her August 19, 1998 sentencing hearing, the District Court sentenced her to ten years in the Montana State Prison at the Women's Correctional Facility, with five years suspended.

¶5 At the time, Johnson was already serving a five-year felony theft sentence, with one year suspended--also for issuing bad checks--that had been imposed by the Eighth Judicial District Court, Cascade County, on April 29, 1998. Johnson also faces similar charges in Ravalli County and Washington State.

¶6 The Missoula County court stated that the conditions of her suspended sentence would be those contained in the Cascade County judgment, those arising from the Ravalli County action, and "conditions one through ten as contained in Ms. Peterson's presentence

investigation and report." Antoinette Peterson performed the presence investigation (PSI) for the action in Cascade County, and her recommendations were adopted virtually verbatim by that court's sentence of Johnson.

¶7 The referenced conditions for the most part were the stock requirements of all probationers: that she obey the rules of the Adult Probation and Parole Bureau, not possess drugs, alcohol or firearms, submit to drug testing and searches, and obtain counseling. Additionally, the conditions included case-specific requirements: that Johnson pay a fee of $120 for probation supervision; that she pay a $5 surcharge for "court information technology;" that she pay $5,826.25 in restitution; that she pay the $250 cost of "supervising payment of restitution;" that she pay a $20 surcharge for each felony conviction; and that she reimburse the attorney's fees for her defense.

¶8 The Missoula County court further specified that Johnson would be assessed the "additional fees and surcharges in connection with this cause" and that the court would recommend to the Department of Corrections that "if you're placed in a community setting or paroled, that you're to have all these same conditions apply, specifically restitution." The court added that "[r]estitution will be paid in the priority as outlined by Mr. Van Valkenburg concerning this Clearwater Realty deal" and would be "the amount of damage actually suffered" as opposed to the amount of the checks.

¶9 Missoula County Attorney, Fred Van Valkenburg, recommended the following to the court at the sentencing hearing:

[T]hat the Court consider suspension of no more than five years of that sentence on the condition that the Defendant make restitution to the victims in this case in the total amount of $22,740.67. Prioritize that restitution so that the first amount of money will go towards reimbursement of the Montana Transfer Company, then subsequently the Rocky Mountain Moving and Storage Company, then all other victims equally, except the Clearwater River Realty, that being last priority.

That the Defendant also be required to reimburse Missoula County for the cost of medical expenses incurred on her behalf in the amount of $16,636.78. That that be paid prior to the restitution being paid to Clearwater River Realty.

Van Valkenburg also recommended that Johnson pay "surcharges, cost of prosecution in the amount of $100, and reimbursement of public defender fees in Missoula County . . ."

¶10 On April 5, 1999, the District Court issued its written Judgement. The court stated that "the Defendant shall abide by all of the conditions and provisions as set out in this Judgment, specifically restitution." The court further provided that:

> IT IS FURTHER ORDERED that pursuant to Section 46-18-244(3)(c), MCA, one-third (1/3) of any earnings by the Defendant in the Montana State Prison or any other correctional institution shall be applied to the restitution ordered in this cause.

¶11 The court then listed 22 conditions of her suspended sentence, including the following:

> 15. That the Defendant shall make restitution through the Clerk of the District Court in the amount of Fourteen Thousand One Hundred Twenty-five and 40/100 Dollars ($14,125.40), according to a schedule as set by her Probation Officer.

> 18. That the Defendant shall pay the cost of prosecution through the Clerk of the District Court in the amount of One Thousand Three Hundred Five and 30/100 Dollars ($1,305.30), according to a schedule as set by her Probation Officer.

> 19. That the Defendant shall pay restitution for medical expenses to the Missoula County Jail through the Clerk of the District Court in the amount of Sixteen Thousand Six Hundred Thirty-six and 78/100 Dollars ($16,636.78), according to a schedule as set by her Probation Officer.

¶12 Johnson appeals the written Judgment, contending that it unlawfully includes conditions that were not enumerated at her oral sentencing.

## STANDARD OF REVIEW

¶13 This Court has recently clarified the proper standard of review of criminal sentences. "This Court reviews a criminal sentence only for legality." *State v. Montoya*, 1999 MT 180, ¶ 15, 295 Mont. 288, ¶ 15, 983 P.2d 937, ¶ 15. We review questions of law *de novo* to determine whether the court's interpretation of the law is correct. *See State v. Waters*, 1999 MT 229, ¶ 14, 296 Mont. 101, ¶ 14, 987 P.2d 1142, ¶ 14.

## DISCUSSION

*Did the District Court err when it included conditions in its written judgment that it did*

*not impose in open court, thereby rendering portions of the written judgment unlawful?*

¶14 Johnson argues that while the District Court's oral pronouncement of sentence was legal, its subsequent written sentence was unlawful because of numerous conflicts with the sentence imposed in open court. Specifically, Johnson claims that the April 5, 1999 written judgment unlawfully ordered: (1) that her wages while incarcerated would be applied to paying restitution; (2) that she must pay $16,636.78 in "restitution" to the Missoula County Jail for her medical expenses; (3) that she would be subject to certain previously undisclosed "civil" restrictions as conditions of her suspended sentence; and (4) that she pay $1,305.30 for "the cost of prosecution." Johnson contends that none of the foregoing was orally imposed by the court at her sentencing, and therefore upon remand should be deleted from the written judgment.

¶15 In *State v. Lane*, 1998 MT 76, ¶ 40, 288 Mont. 286, ¶ 40, 957 P.2d 9, ¶ 40, we held that the oral pronouncement of a criminal sentence in the presence of the defendant is the "legally effective sentence and valid, final judgment" and that the written judgment is merely evidence of the oral sentence. *Lane*, ¶ 40. *See also*, Art. II, Sec. 24, Mont. Const. (accused in "all criminal prosecutions" shall have the right to appear and defend in person); § 46-16-121, MCA (defendant must be present at sentencing); § 46-16-123, MCA (defendant shall appear in person when sentence is imposed); § 46-1-202, MCA (defining "sentence" as the "judicial disposition of a criminal proceeding").

¶16 The sentencing judge in *Lane*, in open court, required that the defendant complete sexual offender treatment before being eligible for parole. In its subsequent written judgment the court incorrectly stated that such treatment was only recommended. *See Lane*, ¶ 9. A year later, the court entered a *nunc pro tunc* order to correct the error. *See Lane*, ¶ 10. Based on the argument of the State on appeal, we concluded that in the event of conflict between the oral pronouncement of sentence and the written judgment and sentence, the oral pronouncement controls. *Lane*, ¶ 48. Therefore, we also concluded that a district court may correct an error in a written judgment so that it accurately reflects what has been orally pronounced. *See Lane*, ¶ 48. *See also State v. Osterloth*, 2000 MT 129, ¶ 40, 1 P.3d 946, ¶ 40.

¶17 Johnson argues that our holding in *Lane* logically implies that, in a strict sense, any portion of a subsequent written judgment that fails to conform, or in some manner conflicts, with an oral sentence is unlawful. Thus, as mere "evidence" of a sentence, the written judgment must provide a mirror image of the court's sentencing language. *See Lane*, ¶ 38 (quoting *United States v. Villano* (10th Cir. 1987), 816 F.2d 1448, 1452-53,

that sentencing "should be conducted with the judge and defendant facing one another and not in secret" and that defendant should be "aware of his sentence when he leaves the courtroom"). *See also State v. Simpson*, 1999 MT 259, ¶ 12, 296 Mont. 335, ¶ 12, 989 P.2d 361, ¶ 12 (following *Lane*, and concluding that a direct conflict existed between the court's oral suspended sentence and the subsequent written judgment due to the imposition of additional conditions); § 46-18-115(6), MCA (requiring court to "specifically state all reasons for the sentence, including restrictions, conditions, or enhancements imposed, in open court on the record and in the written judgment"); § 46-18-801(1), MCA (requiring sentencing judge to specifically enumerate conditions that deprive offender of a civil or constitutional right).

¶18 The State's argument suggests that in applying *Lane* to a particular set of circumstances we must not lose sight of the underlying constitutional principle--that it is only the "sentence" that cannot be imposed on a defendant in absentia. *See Lane*, ¶ 33. With this understanding, the State argues that under certain circumstances an orally imposed sentence may later be clarified by a court's written judgment without unlawfully imposing an additional or new sentence, and relies on *State v. Waters*, 1999 MT 229, 296 Mont. 101, 987 P.2d 1142, for this proposition.

¶19 The State's argument has its merits. For example, the Legislature's statement of "sentencing policy" under § 46-18-101, MCA, can be distilled into two distinct methods (aside from the death penalty) by which we "punish each offender" when a sentence is imposed: the loss of liberty and the sacrifice of property. *See* § 46-18-101(2) and (3), MCA; § 46-18-201, MCA (1997) (providing "sentences that may be imposed" and listing various forms of incarceration, rehabilitation programs, and monetary penalties); § 46-18-202, MCA (providing "additional restrictions on sentence" such as prohibiting defendant from holding public office and owning or carrying a dangerous weapon, and restricting freedom of association and movement).

¶20 Thus, as this Court declared in *State v. Waters*, we must be "mindful of the need to apply *Lane* in a principled manner," and avoid "absolutist" arguments. *See Waters*, ¶¶ 31 and 33.

¶21 Our decision in *Waters* is particularly instructive. There, the defendant argued that he should have been excused from paying restitution within six months of the discharge of sentence--as required by his written judgment--because the sentencing judge failed to mention in open court any specific conditions for the payment of restitution, including the

amount. The defendant argued that such an obvious "conflict" rendered that portion of the written judgment unlawful. *Waters*, ¶ 31.

¶22 We did not disagree with the defendant's characterization. We observed that the court had orally pronounced that Waters would be liable for restitution, but it had nevertheless "failed to elaborate on the specific . . . terms and conditions for paying restitution." *Waters*, ¶ 32. We determined, however, that the district court's written sentencing order merely clarified "ambiguous sentencing conditions imposed orally." *Waters*, ¶ 31 (citing *Lane*, ¶ 37). We reasoned that where a defendant was "clearly put on notice of sentencing conditions and given a sufficient opportunity to respond to those conditions and ask for clarification, that defendant should not be heard to complain." *Waters*, ¶ 32.

¶23 Subsequently, in *State v. Simpson* we distinguished our "ambiguous clarification" rule in *Waters* and determined that certain conditions set forth in a written judgment were invalid pursuant to our decision in *Lane*. *See Simpson*, ¶ 14. In that case, the sentencing judge's oral imposition of sentence diverged from the recommended conditions set forth in the plea agreement and the PSI report, and therefore provided the defendant no prior notice or opportunity to respond to the conditions of his suspended sentence that would later appear in the written judgment. *Simpson*, ¶¶ 10-12. In contrast to *Waters*, we concluded that the sentencing court could not later "fill in the blanks" left void by the court's oral sentence that was silent as to those conditions. *Simpson*, ¶¶ 11-12.

¶24 Based on our holdings in *Lane*, *Waters*, and *Simpson*, we conclude that one problematic rule that has emerged--that a subsequent written judgment may not "conflict" with the oral pronouncement of sentence--is vague, and serves only to cloud what is truly at issue: whether a written judgment has, without notice, substantively *increased* a defendant's criminal sentence that was previously imposed in open court in the defendant's presence. In determining whether any portion of a judge's subsequent written judgment is unlawful, therefore, we need only determine first, whether the defendant was afforded the opportunity to respond to its inclusion upon sufficient notice at sentencing, and second, whether that portion of the written judgment substantively increases one of two things: (1) the defendant's loss of liberty; and (2) the defendant's sacrifice of property.

¶25 Applying this rationale to the case at bar we conclude:

¶26 1. The District Court did not err when it ordered that one-third of Johnson's earnings while incarcerated would be applied to her restitution obligation, pursuant to § 46-18-244

(3)(c), MCA.

¶27 Subsection (3) of § 46-18-244, MCA, provides that in addition to other methods of payment, the court may order one or more of the following in order to satisfy the offender's restitution obligation: "(c) payment of up to one-third of the offender's prison earnings." Under § 46-18-201(2), MCA (1997) (now subsection (5) under 1999 MCA), as well as § 46-18-241(1), MCA, a sentencing judge must, as a matter of law, impose restitution in a sentence for the full amount of a victim's pecuniary loss. The duty to pay full restitution under a sentence remains with the offender until full restitution is paid, pursuant to § 46-18-241(1), MCA.

¶28 The District Court specifically emphasized restitution in imposing sentence in open court. Further, the issue of restitution was thoroughly addressed by the State and Johnson's counsel, as well as Johnson herself, whose last words to the court prior to receiving her sentence were: "Your Honor, just give me the chance to pay people back."

¶29 As a reflection of her oral sentence, the court's written judgment actually reduced the amount requested by the State, from $22,740.67 to $14,125.40, which is consistent with its oral pronouncement that "restitution be the amount of damage actually suffered . . . as opposed to the amount of the check." The court's subsequent determination of the *method* for this payment, which is allowable under the foregoing statute, did not increase either Johnson's loss of liberty or sacrifice of property as imposed in open court, and thus did not impose an unlawful condition on her sentence. *See Waters*, ¶¶ 31-32.

¶30 2. The District Court erred when it imposed "restitution" to the Missoula County Jail for $16,636.78 in medical expenses, in its written judgment.

¶31 First, the court made no reference whatsoever to the imposition of this cost in its oral sentence, even though under § 7-32-2245(1), MCA, an inmate may be held responsible for the "actual medical costs" accrued during an inmate's confinement in a detention center upon a finding of ability to pay. This omission occurred despite the fact that the State just moments prior to imposition of sentence specifically requested its inclusion, and counsel for Johnson acknowledged that this sum was owed, but contended that Johnson lacked the ability to pay, and that it should be "a last priority, if at all." Clearly, Johnson did not leave the court room that day "aware of her sentence" in this respect. *See Lane*, ¶ 38 (quoting *United States v. Villano* (10th Cir. 1987), 816 F.2d 1448, 1452-53).

¶32 Second, even if the court's oral reference to "restitution" intended to include this cost, the Missoula County Jail does not fall within the statutory definition of a "victim," which is a requisite for the imposition of restitution. *See* § 46-18-241(1), MCA (requiring an offender to make full restitution to a "victim of the offense") and § 46-18-243(2)(a)(iii), MCA (defining "victim" as a governmental entity that suffers loss of property as a result of the commission of an offense). We therefore conclude that the imposition of medical costs as "restitution" in the court's written judgment clearly increased Johnson's sacrifice of property under her oral sentence, and therefore was unlawful and should be stricken.

¶33 3. The District Court did not err when it imposed certain "civil" restrictions as conditions of Johnson's suspended sentence.

¶34 In stark contrast to our decision in *Simpson*, the court here informed Johnson at sentencing that the "civil restrictions" currently in place under her other judgments, and a presentence investigation (PSI) report, would apply to her new suspended sentence in this matter as well. These conditions were recommended by the State and not contested by Johnson at her sentencing.

¶35 Subsequently, the court imposed 22 conditions for Johnson's suspended sentence in its April 5, 1999 written judgment. The first 14 involve "civil restrictions" as opposed to an imposition of monetary punishment. On appeal, Johnson does not specifically identify which of the 14 allegedly do not appear in either the presentence investigation (PSI) report, or the prior judgments as referenced by the court's oral sentence, nor does she specifically allege how the "additional" conditions substantively restrict her liberty. Further, Johnson concedes that the court's oral reference to "conditions one through ten as contained in Ms. Peterson's presentence investigation and report" apply to her, pursuant to § 46-18-801, MCA (requiring that civil or constitutional rights be "specifically enumerated by the sentencing judge"). Instead, she maintains that the PSI report and Department of Corrections rules and regulations do not include all of the restrictions subsequently imposed in the court's written judgment. We disagree.

¶36 Upon review, we find no evidence, and Johnson has presented none, that any one of the 14 "civil restriction" conditions substantively increased the loss of liberty or sacrifice of property imposed by her oral sentence. The written conditions set forth by the court are largely verbatim to those that Johnson concedes apply to her. If not verbatim, the conditions merely add more detail to those already in place under Peterson's PSI report. For example, the referenced PSI report prohibited Johnson from entering "any

establishment where alcohol is the chief item of sale," which is also found in the Ravalli PSI report and the Cascade County judgment. In turn, condition number five in the court's written judgment provided this same restriction and included the language "any gambling casinos." Such a clarification did not substantively increase her loss of liberty. We conclude, therefore, that the 14 "civil restriction" conditions in the court's written judgment were lawful.

¶37 4. The District Court erred when it required that Johnson pay $1,305.30 for the "cost of prosecution" in its written judgment.

¶38 At the sentencing hearing, the State recommended that Johnson pay the "*cost of prosecution* in the amount of $100 . . ." in addition to its recommendation that she pay "surcharges" and "public defender fees" similar to those imposed by Johnson's Cascade County sentence. The court did not expressly address the "*cost of prosecution*" recommendation in its oral sentence; rather, it stated that Johnson would be assessed with "additional fees and surcharges in connection with this cause." Further, the conditions found in the Cascade County PSI and other judgments do not provide for the imposition of the "cost of prosecution." Once again, Johnson did not leave the court room that day "aware of her sentence" with respect to the imposition of the "cost of prosecution" that, at the court's discretion, may be imposed pursuant to § 46-18-232, MCA.

¶39 We conclude, therefore, that the imposition of this "cost" in the court's written judgment was included without notice, and unlawfully increased Johnson's sentence.

¶40 Accordingly, this matter is affirmed in part, reversed in part, and remanded so that the written judgment may be conformed to the oral pronouncement of sentence consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY