No. 02-578

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 248

STATE OF MONTANA,

       Plaintiff and Respondent,

  v.

MANUEL EMILIO LUCERO,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 2001-309,
Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          William F. Hooks, Attorney at Law, Helena, Montana

      For Respondent:

          Honorable Mike McGrath, Attorney General; C. Mark Fowler,
Assistant Attorney General, Helena, Montana

          Dennis Paxinos, County Attorney; Rod Souza, Deputy County
Attorney, Billings, Montana

Submitted on Briefs:  July 3, 2003

Decided:  September 8, 2004

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Manuel Lucero (Lucero) appeals his conviction of assault on a peace officer following a jury trial, and from the sentence imposed by the Thirteenth Judicial District Court, Yellowstone County. We affirm in part, reverse in part, and remand.

¶2 The following issues are raised on appeal:

¶3 1. Did Lucero's attorney provide ineffective assistance of counsel?

¶4 2. Did the District Court err by imposing conditions in the written judgment that it did not impose at the oral pronouncement of sentence?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 On the evening of April 13, 2001, Detention Officer Jeff McRae was working in the maximum security unit of the Yellowstone County Detention Facility where Lucero was an inmate. At approximately 9:00 p.m. that evening, Lucero was outside his cell visiting with inmates in lock-down at the lower level of the cell block. When Officer McRae and his partner, Detention Officer Timothy Rickett, asked Lucero to return to his cell, which was located on the upper level, Lucero became agitated and refused to comply. Officer McRae again instructed Lucero to "lock-down," or return to his cell, and motioned for him to head up the stairs. Lucero eventually began to ascend the stairway, with Officers McRae and Rickett behind him. As he did so, he continued to exhibit agitation by cursing at the officers. When Lucero reached the top of the stairs, he turned around and attempted to strike Officer McRae. McRae blocked Lucero's punch with his hands, wrapped Lucero in a "hug," so that his arms were down at his sides, and carried Lucero to his cell approximately eight feet

2

away. Once inside the cell, Officer McRae laid Lucero down on his bunk. Lucero, who was still extremely combative, bit the officer's right forearm, drawing blood. The officers then moved Lucero from the bunk to the floor, and attempted to restrain him in handcuffs. Lucero began spinning his body around on the floor, kicking and attempting to bite the officers whenever they came near. The officers eventually restrained Lucero after radioing for assistance, and Officer McRae obtained medical treatment for his injuries.

¶6 On April 18, 2001, Lucero was charged with assault on a peace officer, a felony, in violation of § 45-5-210, MCA (2001). Lucero entered a plea of not guilty, and the Yellowstone County Defender's Office was appointed as counsel. Shortly thereafter, the State filed a sealed notice of intent to have Lucero designated a persistent felony offender. On May 18, 2001, attorney David Duke was substituted as counsel for Lucero.

¶7 A jury trial followed on September 10 and 11, 2001. After approximately two and one-half hours of deliberation, the jury found Lucero guilty of the offense charged. Several days later, Lucero brought a *pro se* motion in District Court alleging that Duke had failed in multiple respects to ensure he received a fair trial. In particular, Lucero claimed to have a hearing impairment that prevented him from hearing people in open court. He also claimed to have the equivalent of a ninth grade education, which caused him to occasionally experience difficulty expressing his thoughts. Altogether, Lucero claimed that Duke had rendered ineffective assistance of counsel on thirteen grounds, including that Duke had failed to communicate a plea offer made by the State. Lucero requested a hearing and the appointment of replacement counsel. The District Court granted Lucero's motion, and, on

3

March 27, 2002, Lucero appeared before the District Court represented by new defense counsel, Kevin Gillen, for an evidentiary hearing.

¶8 At the hearing, Duke testified that Lucero did not inform him of his hearing disability until shortly before he was to testify at trial. Duke explained that during Lucero's testimony, efforts were made to ensure that Lucero could hear the questions asked, including reminding counsel to speak loudly and requesting that Lucero inform questioning counsel, whether during direct or cross-examination, if he was unable to hear the question. Duke further testified that the State had orally offered a ten-year sentence and withdrawal of the Notice of Persistent Felony Offender designation. Duke communicated this offer to Lucero, but stated that he believed it was unreasonable given that the maximum sentence allowed under the statute was ten years.

¶9 On April 22, 2002, the District Court entered findings of fact, conclusions of law, and an order denying Lucero's ineffective assistance of counsel claims. In particular, the court found that Lucero had not shown that he suffered any prejudice as a result of his alleged hearing impairment and concluded that Duke had not rendered ineffective assistance by failing to make special accommodations on Lucero's behalf. The court further found Lucero's testimony that Duke had failed to communicate a plea offer was not credible, and concluded that Duke had fully informed Lucero of any plea offer made by the State, and that Lucero had elected to proceed to trial.

¶10 A sentencing hearing was thereafter held on May 23, 2002. At sentencing, the State recommended a term of commitment at the Montana State Prison of thirty years, with ten

years suspended. Defense counsel requested imposition of the minimum sentence under § 45-5-210, MCA, with an additional five years imposed due to Lucero's status as a persistent felony offender. After noting Lucero's extensive criminal history from his presentence investigation report, the District Court designated Lucero a persistent felony offender and sentenced him to twenty years at the Montana State Prison, with five years suspended.

¶11 On May 31, 2002, the District Court reduced the oral pronouncement of sentence to a written judgment which included approximately twenty conditions not previously pronounced in open court. For the most part, the sentencing conditions were "stock restrictions," or conditions commonly imposed on probationers. However, they also included conditions restricting Lucero from entering any place where intoxicating liquor or beer is the chief item of sale, entering into any game of chance, or any place where gambling may be taking place, and requiring Lucero to undergo a chemical dependency evaluation. Lucero appeals from the court's judgment and imposition of these written conditions, as well as its denial of his claim for ineffective assistance of counsel.

## STANDARD OF REVIEW

¶12 The Supreme Court reviews a district court's imposition of sentence for legality only. *State v. Thompson*, 2004 MT 131, ¶ 7, 321 Mont. 332, ¶ 7, 91 P.3d 12, ¶ 7. This is a question of law, which we review to determine whether the court's interpretation of the law is correct. *Dept. of Corrections v. Phelps*, 2000 MT 18, ¶ 8, 298 Mont. 135, ¶ 8, 995 P.2d 963, ¶ 8. However, claims of ineffective assistance of counsel are mixed questions of law

5

and fact, and we therefore employ a *de novo* standard of review. *State v. Turner*, 2000 MT 270, ¶ 47, 302 Mont. 69, ¶ 47, 12 P.3d 934, ¶ 47.

## DISCUSSION

¶13 **Did Lucero's attorney provide ineffective assistance of counsel?**

¶14 Lucero maintains that he received ineffective assistance of counsel at the plea bargaining stage of the proceedings. He claims that, while Duke may have communicated the State's oral plea offer to him, he failed to adequately explain the nature and terms of that offer. In response, the State contends that Lucero's claim is not appropriate for review on direct appeal because there are insufficient facts on record to support his claim.

¶15 Ineffective assistance of counsel claims are analyzed under the two-prong test from *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Under the first part of the test, the defendant bears the burden of showing that his counsel's performance was deficient or fell below the objective standard of reasonableness. *State v. St. John*, 2001 MT 1, ¶ 37, 304 Mont. 47, ¶ 37, 15 P.3d 970, ¶ 37, *overruled on other grounds by State v. Brister*, 2002 MT 13, 308 Mont. 154, 41 P.3d 314. In so doing, the defendant must overcome a strong presumption that counsel's defense strategies and trial tactics fall within a wide range of reasonable and sound professional decisions. *Davis v. State*, 2004 MT 112, ¶ 20, 321 Mont. 118, ¶ 20, 88 P.3d 1285, ¶ 20 (citing *Strickland*, 466 U.S. at 688-89, 104 S.Ct at 2064-65, 80 L.Ed.2d at 693). Second, the defendant must show that he was prejudiced by counsel's deficient performance. Prejudice is established when the defendant shows reasonable probability that, but for counsel's unprofessional errors, the

6

result of the proceedings would have been different. *State v. Hagen*, 2002 MT 190, ¶ 18, 311 Mont. 117, ¶ 18, 53 P.3d 885, ¶ 18.

¶16 Normally, the record on appeal must adequately document *why* counsel acted in a particular manner before this Court will review an ineffective assistance of counsel claim on direct appeal. *State v. Jefferson*, 2003 MT 90, ¶ 49, 315 Mont. 146, ¶ 49, 69 P.3d 641, ¶ 49. If the record does not supply the reason for counsel's act or omission, the claim is more appropriately raised by petition for postconviction relief. *State v. Harris*, 2001 MT 321, ¶ 21, 306 Mont. 525, ¶ 21, 36 P.3d 372, ¶ 21.

¶17 However, in this case, the claimed act or omission cannot be considered "trial strategy." Rather, counsel's communication of the oral plea offer to Lucero was obligatory, not strategic. *Hans v. State* (1997), 283 Mont. 379, 392, 942 P.2d 674, 682. Thus, we need not ask "why" counsel acted or failed to act, but *whether* counsel acted, and if so, whether counsel acted adequately. So long as the trial record sufficiently documents the challenged act or omission of defense counsel, a review of an obligatory action may be performed on direct appeal. *See Harris*, ¶ 21.

¶18 In the present case, the trial record adequately documents Lucero's challenges to Duke's representation and provides sufficient facts for this Court to engage in a direct review of Lucero's claim. The record establishes that on March 27, 2002, the District Court held an evidentiary hearing in response to Lucero's claims of ineffective assistance of counsel and appointed replacement counsel to represent him during the proceeding. Lucero testified at the hearing and was afforded ample opportunity to present arguments and raise objections.

Throughout his testimony, Lucero repeatedly denied having received any information from Duke concerning the State's plea offer. Duke testified that he conveyed the State's oral plea offer of ten years and withdrawal of the persistent felony offender designation to Lucero, but conceded that he may have stated that the offer was illusory, since the maximum sentence permitted under § 45-5-210, MCA, is ten years. Duke further described Lucero as insistent about his innocence and in his desire to go to trial. After weighing the testimony presented, the District Court concluded that "Duke's conduct in communicating the plea offer did not fall below the standard of reasonable representation required of criminal defense attorneys" and that Lucero was "fully informed of any plea offer made by the State, and [Lucero] chose to proceed to trial."

¶19    Our review of the record leads us to conclude that the District Court's findings were supported by the evidence and that it reached a correct conclusion of law. Duke's testimony demonstrated that he fully communicated the plea offer to Lucero and that Lucero insisted on going to trial. Accordingly, we uphold the District Court's conclusion that Duke's assistance was not deficient.

¶20    We note that the State also argues that Lucero's claim is not appropriate for review on direct appeal because it is different from the argument advanced in District Court. The State claims that instead of arguing that Duke failed to communicate a plea offer, Lucero argues on appeal that Duke's explanation of the plea offer was insufficient. As the State correctly points out, this Court does not review new arguments or theories on appeal. *Ellenburg v. Chase*, 2004 MT 66, ¶ 18, 320 Mont. 315, ¶ 18, 87 P.3d 473, ¶ 18; *State v.*

8

*Minez*, 2003 MT 344, ¶ 19, 318 Mont. 478, ¶ 19, 82 P.3d 1, ¶ 19. Nonetheless, Lucero insists that his argument concerning the adequacy of Duke's explanation of the plea offer was raised in the District Court and is not new. Admittedly, the two arguments are subtly distinct. However, given that the District Court also addressed the adequacy of communication issue by determining that Lucero was fully informed of any plea offer made by the State, we concur that Lucero properly raised the issue on appeal. Having done so and concluded that Duke's representation was not deficient, we affirm the District Court's findings and conclusions and the denial of Lucero's claim.

¶21 **Did the District Court err by imposing conditions in the written judgment that it did not impose at the oral pronouncement of sentence?**

¶22 Section 46-18-116, MCA, pertains to correction of the written judgment and provides in relevant part:

> (2) If a written judgment and an oral pronouncement of sentence or other disposition conflict, the defendant or the prosecutor in the county in which the sentence was imposed may, within 120 days after filing of the written judgment, request that the court modify the written judgment to conform to the oral pronouncement. The court shall modify the written judgment to conform to the oral pronouncement at a hearing, and the defendant must be present at the hearing unless the defendant waives the right to be present or elects to proceed pursuant to 46-18-115. The defendant and the prosecutor waive the right to request modification of the written judgment if a request for modification of the written judgment is not filed with 120 days after the filing of the written judgment in the sentencing court.

¶23 Relying on this Court's decision in *State v. Lane*, 1998 MT 76, 288 Mont. 286, 957 P.2d 9, wherein we held that the oral pronouncement of sentence is the legally effective and valid final judgment, Lucero argues that § 46-18-116, MCA, is unconstitutional as applied

9

in this case because it allows for the modification of the oral sentence outside the presence of the defendant where the defendant fails to take any action to correct the written judgment within 120 days. The State responds that § 46-18-116(2), MCA, supersedes the *Lane* decision and now directs the manner in which conflicts between the written judgment and oral pronouncement of sentence are to be handled. In effect, both Lucero's and the State's arguments presume that, by operation of statute, the written judgment becomes the valid final judgment after 120 days.

¶24 However, we recently rejected this interpretation of § 46-18-116(2), MCA, in *State v. Kroll*, 2004 MT 203, 322 Mont. 294, ___ P.3d ___. The issue in *Kroll* was whether certain "stock restrictions" included within the written judgment but omitted from the oral pronouncement of sentence were lawful. As it does here, the State argued that the defendant had waived his right to challenge the imposition of the written conditions on appeal because he had not sought modification of the written judgment within the statutorily prescribed time frame. After examining the plain language of the statute, we concluded that § 46-18-116(2), MCA, did not create a presumption favoring the written judgment over the oral sentence, but merely provided the parties an avenue for conforming the written judgment to the oral pronouncement of sentence. *Kroll*, ¶ 18. Because § 46-18-116, MCA, did not supersede our decision in *Lane*, we held that the oral pronouncement of sentence continued to control in situations in which a conflict existed between the oral and written judgments. *Kroll*, ¶ 18.

¶25 Applying our holding in *Kroll* to this case, we conclude that the State's argument that Lucero waived his right to modify or complain about the imposition of the written sentencing

10

conditions is rendered moot, as are the parties' arguments concerning the constitutionality of § 46-18-116, MCA. The sentence orally pronounced from the bench on May 23, 2002, is the legally effective and valid final judgment in this case. Having so concluded, the question next becomes whether the imposition of certain sentencing conditions not announced in open court but included within the written judgment was lawful.

¶26    In resolving this issue we again turn to our decision in *Kroll*. In *Kroll*, the sentencing court had imposed conditions within the written judgment which were not pronounced at sentencing, but which were generally considered standard conditions for all probationers (i.e. requiring the defendant to conduct himself in a law-abiding manner, to submit to reasonable searches of his person, vehicle, or premises whenever requested to do so by his probation officer, to refrain from owning or possessing any firearms or deadly weapons, and requiring him to maintain full-time legitimate employment). *See Kroll*, ¶ 11. In concluding that the imposition of such conditions was lawful, we applied the rule established in *State v. Johnson*, 2000 MT 290, 302 Mont. 265, 14 P.3d 480–that is, when determining whether the written judgment is unlawful by reason of its nonconformance with the oral pronouncement of sentence, we need determine (1) whether the defendant was afforded the opportunity to respond to its inclusion upon sufficient notice at sentencing, and (2) whether that portion of the written judgment prejudices the defendant by substantively increasing either the defendant's loss of liberty, or the defendant's sacrifice of property. *Johnson*, ¶ 24; *Kroll*, ¶ 21.

¶27 Applying the *Johnson* rule to the facts at issue in *Kroll*, we determined that the imposition of "stock" sentencing restrictions in the written judgment did not prejudice the defendant by substantively increasing his sentence. *Kroll*, ¶ 22. We therefore concluded that, given the standard nature of the sentencing conditions and the fact that the defendant had not demonstrated any actual prejudice as a result of the conditions imposed, we would not declare the sentencing conditions unlawful. *Kroll,* ¶ 23. We cautioned, however, that a sentencing condition imposed outside the presence of the defendant which was not a standard condition of probation would run afoul of our holding in *Lane*. *Kroll*, ¶ 23.

¶28 In the present case, the District Court imposed numerous conditions of suspended sentence in its May 31, 2002, written judgment that were not announced at the oral pronouncement of sentence, including the following:

> 3. The defendant shall conduct himself in a law-abiding manner and shall not violate any law of the United States or of the State of Montana or any other state, or the ordinance of any city or town of this State or any other state during said term.
>
> 4. The defendant shall maintain as steady employment as possible during said term, and he shall to the best of his ability fully and completely contribute to the support of his family.
>
> 5. The defendant is placed under the supervision and control of Adult Probation and Parole Field Services, and is to abide by their rules and regulations.
>
> 6. The defendant is hereby required to submit to reasonable searches of his person, vehicle, or premises whenever requested to do so by his Probation Officer or by a Law Enforcement Officer at the direction of his Probation Officer. The purpose of these searches is to help the defendant in his rehabilitation.

. . . .

8. The defendant shall not own, possess, or be in control of any firearms or deadly weapons, including black powder, as defined by State or Federal Law.

. . . .

13. The defendant shall secure and maintain full-time legitimate employment . . . .

14. The defendant shall have no contact with the victim(s) and/or the family of this criminal cause in any manner: in person, by telephone, personal and/or third party, computer generated or in writing.

15. The defendant shall not socialize and/or associate with any known convicted felons, adjudicated juveniles, known illicit drug users, drug dealers and/or any group/crowd associated with members of street gangs or other such activity.

As in *Kroll*, each of these sentencing conditions are civil restrictions commonly imposed in criminal sentences. Because such conditions do not substantively increase a defendant's loss of liberty or sacrifice of property, *see Kroll*, ¶ 23, and Lucero has demonstrated no actual prejudice as a result of their imposition, we uphold them as lawful, despite the fact that they were not announced in open court.

¶29     In addition to the foregoing civil restriction conditions, the written judgment also included conditions to be completed at the direction of Lucero's supervising officer. Conditions 10, 11, 12 and the remaining portions of 13 address counseling, treatment and training, and are all cumulative, being subsumed within Condition 12's requirement that "defendant shall participate in medical/mental/vocational/educational/financial counseling, treatment, therapy or aftercare programs as directed by his Supervising Officer . . . ." Lucero

13

has not specifically taken issue with any of these conditions, but claims generally that they are illegal because not announced at the oral pronouncement of sentence. From the record, it is evident that the District Court did not announce any conditions of suspended sentence at the oral pronouncement. Nonetheless, we conclude the foregoing conditions of sentence are lawful because it is a routine requirement for a probationer to be subject to the discretion of his probation officer and to follow the probation officer's recommendations with regard to improvement programs. Indeed, this is one requirement we have already addressed–that is, the defendant shall be "placed under the supervision and control of Adult Probation and Parole Field Services, and is to abide by their rules and regulations." (Condition 5.) As we noted above, such a condition does not deprive the defendant of liberty or property, and there being no actual prejudice to the defendant, we likewise uphold these conditions.

¶30 Finally, the written judgment contains the following conditions of sentence:

> 1. The defendant shall not frequent any place where intoxicating liquor or beer is the chief item of sale nor shall he use intoxicants or beer; nor shall he purchase, use, possess, give, sell or administer any narcotic or dangerous drugs or have in his possession same without proper prescription by a doctor.

> 2. The defendant shall not enter into any game of chance nor shall he frequent any place where gambling may be taking place.

> . . . .

> 7. The defendant shall submit to chemical substance tests (urinalysis/breath/blood analysis) whenever requested to do so by his Probation Officer for the purpose of aiding the defendant in his termination of the use of dangerous drugs and/or alcohol.

> . . . .

14

9. The defendant shall undergo a chemical dependency assessment/evaluation and shall review the results thereof with his Supervising Officer to determine program(s) for relapse prevention. Defendant shall participate in such rehabilitation therapy as may be determined necessary by his Supervising Officer following review of the chemical dependency assessment/evaluation; shall follow all recommendations made and shall not terminate such programs without prior approval from his Supervising Officer.

Unlike the conditions of sentence discussed thus far, these sentencing conditions cannot be classified as "standard" or "stock" sentencing conditions. These conditions impose significant restrictions and requirements upon Lucero that result in a loss of his liberty. Such conditions cannot be added in the written judgment without being first imposed at the oral pronouncement, and further, may be imposed only if they bear a sufficient correlation to the underlying offense for which the defendant is being sentenced. As we held in *State v. Ommundson*, 1999 MT 16, ¶ 11, 293 Mont. 133, ¶ 11, 974 P.2d 620, ¶ 11, in order to be "reasonably related to the objectives of rehabilitation and protection of the victim and society," as required by § 46-18-202(1)(e), MCA, a sentencing limitation or condition must have some correlation to the underlying offense for which the defendant is being sentenced. In this case, there is no evidence that Lucero's assault upon Officer McRae was influenced by a chemical dependency or intoxicating substance. Nor is there any connection between a condition prohibiting Lucero from entering into games of chance and the underlying offense. Similarly, in *Kroll*, the State conceded that conditions which restricted Kroll's possession of alcohol and required chemical dependency assessment and treatment were unrelated to Kroll's bad check charge, and we struck those conditions from the judgment. *Kroll*, ¶¶ 25, 30.

15

¶31    Thus, we reverse conditions 1, 2, 7, and 9 of the written judgment, and order these conditions to be stricken from the written judgment on remand.  The remaining portions of the written judgment are affirmed.

¶32    Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

/S/ JIM RICE

We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER