

DA 11-0297

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 12A

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JOSHUA KAYE ANDRESS,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 2010-487
Honorable Edward P. McLean, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Wade Zolynski, Chief Appellate Defender, Jennifer A. Hurley, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Pamela P. Collins, Assistant
Attorney General, Helena, Montana

          Fred Van Valkenburg, Missoula County Attorney, Missoula, Montana

Submitted on Briefs:  November 21, 2012

Decided:  January 22, 2013

Amended:  March 26, 2013

Filed:

_____

Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     The defendant Joshua Kaye Andress appeals from his conviction of felony violation of a permanent order of protection and tampering with a witness. We affirm in part and reverse and remand in part.

¶2     Under the terms of a permanent order of protection (POP) dated March 2009, Joshua Andress is prohibited from any contact with his ex-girlfriend, Sara Nichols. In October 2010, Andress saw Nichols in a Missoula bar. It is undisputed that he was within fifteen hundred feet of Nichols in violation of the POP. Andress was on felony probation at this time for previous violations of this POP. Nichols called the police and Andress was subsequently arrested and charged with violating the order of protection.

¶3     While incarcerated at the Missoula County Detention Center, Andress created various notes he claimed were for his attorney. One note, however, was obtained by a soon-to-be-released cellmate, Paul Randleas. Randleas claimed Andress gave him the note to give to one of Andress's acquaintances, Morgan Styles. The note asked Styles to make an untruthful statement to the authorities to help Andress. Randleas turned the note over to the police upon his release which resulted in Andress being charged with tampering with a witness. Following a jury trial in the Fourth Judicial District Court, Andress was convicted on both counts and sentenced from the bench to 15 years for each charge with 10 years for each charge suspended, to be served concurrently. The subsequent written sentence contained 26 terms and conditions that were not expressly stated during oral pronouncement of sentence, and imposed fines and fees in the amount of $260.

2

¶4    On appeal, Andress does not challenge any action taken by the District Court nor does he challenge his sentence; rather, he claims his attorney was ineffective in offering erroneous jury instructions and in failing to file a motion to conform the written sentence to the orally-pronounced sentence.

**ISSUE**

¶5    The issue on appeal is whether counsel rendered ineffective assistance.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶6    In March 2009, after a few years of dating, Sara Nichols sought and obtained a permanent order of protection against Josh Andress, claiming physical and mental abuse. Andress responded by leaving at least ten extremely profane and frightening messages on Nichol's answering machine. These calls and other actions quickly resulted in multiple violations of the POP, the third and subsequent offenses being felonies.

¶7    On October 16, 2010, while on probation for these charges, Andress entered the Rhino Bar in Missoula and immediately saw Nichols. He left the bar but returned shortly thereafter at which time he saw Nichols was still there and he left again. Nichols claimed he subsequently left and re-entered two more times. She also claimed that he approached her after his third entrance, tapped her on the shoulder and spoke to her.[1] He then left the bar and returned for the last time. Nichols left and called 9-1-1. The police came and interviewed Nichols, Nichols' companion, and Andress, but did not arrest Andress that night. The following day, Nichols called Andress's probation officer, the county

---

[1] Andress denied that he touched or spoke with Nichols, but while in the Missoula County Detention Center he purportedly told Paul Randleas that he had done so.

attorney's office, and one of the responding police officers. Andress was subsequently arrested and charged with violating the POP.

¶8 While jailed in Missoula County, Andress made numerous notes about his case. He claims he made these notes to discuss with his attorney. One note, however, came into the possession of a soon-to-be-released cellmate, Randleas. Randleas testified that Andress gave him the note and asked that he deliver the message contained in it to Morgan Styles, a former co-worker of Andress. The note asked Styles to testify that he saw Andress at the Rhino Bar on the night of October 16 but that Andress spoke with no one and left the bar without returning. Styles never received the note, however, because Randleas, a police informant, turned it over to the police. The police contacted Styles who reported that he was not at the Rhino Bar that night and was out of town for that entire weekend. Andress was charged with tampering with a witness.

¶9 A jury trial was conducted on January 31, 2011, and Andress's defense was that his contact with Nichols at the bar was unintentional and he never intended to violate the order of protection. He also admitted writing the Styles note but denied giving it to Randleas for delivery. A unanimous jury convicted Andress on both charges.

¶10 On March 23, 2011, the District Court judge orally pronounced sentence, sentencing Andress, as a persistent felony offender, to Montana State Prison (MSP) for 15 years for each charge with 10 years for each charge suspended. The sentences were to run concurrently with each other but consecutive to a two-year sentence that had been

4

imposed on Andress the day before in another Montana district court.[2] On March 25, 2011, the District Court issued its written judgment which included the prison sentence as well as 26 terms and conditions of probation and the requirement that Andress pay $260 in fines and fees.

¶11 Andress filed a timely appeal claiming his trial counsel was ineffective for offering jury instructions that set forth an incorrect mental state for the charged offenses, and for failing to move the District Court to conform Andress's written sentence to his oral sentence in accordance with § 46-18-116(2), MCA.

¶12 We affirm in part and reverse and remand in part.

## STANDARD OF REVIEW

¶13 We review claims of ineffective assistance of counsel under the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). To prevail under *Strickland*, a defendant must show (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced him or her. Both prongs of this test must be satisfied; thus, an insufficient showing on one prong negates the need to address the other. This Court must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Mitchell*, 2012 MT 227, ¶ 21, 366 Mont. 379, 286 P.3d 1196. Claims of ineffective assistance of counsel are mixed questions of law and fact which this Court reviews de novo. *St. Germain v. State*, 2012 MT 86, ¶ 7, 364 Mont. 494, 276 P.3d 886.

---

[2] On March 22, 2011, Andress appeared before Judge Robert Deschamps on a Petition to Revoke his probation for felony and misdemeanor violations of this same order of protection. Judge Deschamps revoked Andress's probation and sentenced him to two years at MSP.

¶14 Jury instructions serve an important role in trial. They guarantee decisions consistent with the evidence and the law, which can be accomplished when the instructions are as plain, clear, concise, and brief as possible. District courts have broad discretion when issuing jury instructions, but this discretion is restricted by the overriding principle that jury instructions must fully and fairly instruct the jury regarding the applicable law. The instructions must prejudicially affect the defendant's substantial rights to constitute reversible error. *State v. Hovey*, 2011 MT 3, ¶ 10, 359 Mont. 100, 248 P.3d 303 (citations omitted).

¶15 The Supreme Court reviews a district court's imposition of sentence for legality only. This is a question of law which we review to determine whether the court's interpretation of the law is correct. *State v. Kroll*, 2004 MT 203, ¶ 12, 322 Mont. 294, 95 P.3d 717.

## DISCUSSION

¶16 *Did Andress's trial counsel provide ineffective assistance?*

**Jury Instructions**

¶17 Andress was charged with violating § 45-5-626(1), MCA, which states in relevant part:

> A person commits the offense of violation of an order of protection if the person, with knowledge of the order, purposely or knowingly violates a provision of . . . an order of protection under Title 40, chapter 15.

Andress stipulated to having knowledge of the protective order and its contents, including the prohibition of being within fifteen hundred feet of Nichols.

6

¶18 Andress was also charged with witness tampering. Section 45-7-206(1)(a), MCA, provides, in relevant part:

> A person commits the offense of tampering with witnesses and informants if, believing that an official proceeding or investigation is pending or about to be instituted, the person purposely or knowingly attempts to induce or otherwise cause a witness or informant to: testify or inform falsely . . . .

¶19 By their express language, these statutes provide that violation of the statute requires a person to commit an act "purposely or knowingly." During settlement of jury instructions, Andress's counsel proposed instructions that defined the terms "purposely" and "knowingly" as used in the statutes. Counsel proposed the following jury instructions derived from § 45-2-101, MCA, and the Montana Criminal Jury Instructions:

> A person acts purposely when it is his/her conscious object to engage in conduct of that nature; *or* to cause such a result.

> A person acts knowingly: when the person is aware of his or her conduct; *or* when the person is aware there exists the high probability that the person's conduct will cause a specific result. (Emphasis added.)

The District Court accepted these proposed instructions and gave them to the jury.

¶20 Andress argues that his counsel's proposed instructions included definitions of purposely and knowingly that did not apply to his charged offenses and, as a result, allowed the jury to convict him based upon his conduct, even if the jury believed his defense that he did not intend to violate the POP or tamper with a witness.

¶21 Section 45-2-101(65), MCA, defines "purposely" in relevant part:

> [A] person acts purposely with respect to a result or to conduct described by a statute defining an offense if it is the person's conscious object to engage in that conduct or to cause that result. When a particular purpose is an element of an offense, the element is established although the purpose is

7

conditional, unless the condition negatives the harm or evil sought to be prevented by the law defining the offense.

¶22 Section 45-2-101(35), MCA, defines "knowingly" as:

[A] person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when the person is aware of the person's own conduct or that the circumstance exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when the person is aware that it is highly probable that the result will be caused by the person's conduct. When knowledge of the existence of a particular fact is an element of an offense, knowledge is established if a person is aware of a high probability of its existence.

¶23 Relying on *State v. Lambert*, 280 Mont. 231, 929 P.2d 846 (1996), and *State v. Patton*, 280 Mont. 278, 930 P.2d 635 (1996), Andress claims that the District Court was "required to instruct the jury on the definition of purposely and the definition of knowingly that applies in the context of the particular crime." We agree that *Lambert* and *Patton* require courts to instruct the jury on the proper mental state element based upon the charged offense; however, beyond that these cases are distinguishable in that they address Montana's criminal endangerment statute and our deliberate homicide statute. We have not previously determined whether §§ 45-5-626 and 45-7-206(1)(a), MCA, emphasize conduct or result of conduct.

¶24 Andress asserts the statutes he is charged with violating, as in *Lambert*, do not particularize conduct which, if engaged in, results in commission of the offense; rather, one may engage in a wide variety of conduct and still commit the offense. He maintains that § 45-5-626, MCA, "seeks to avoid the 'singular result' of the violation of a protective order, not the many forms of conduct that result in the violation of a protective order." Similarly, he opines that § 45-7-206(1)(a), MCA, seeks to avoid the "singular"

8

result of causing a witness to testify falsely, without regard to the many forms of conduct that could result in a witness testifying falsely.

¶25    In other words, it appears Andress is claiming that the correct jury instruction would have instructed the jury that he could be guilty of violating the POP only if it was his "conscious object," or intention, to violate the order of protection or that he was aware that it was highly probable that his conduct would violate the statute. Additionally, vis-à-vis the witness tampering claim, because he admits he wrote the note but asserts he did not give the note to Randleas to give to Styles and he did not write the note with the purpose of committing witness tampering, the <u>result-based</u> purposely and knowingly jury instruction should have been given. Therefore, Andress asserts the appropriate jury instructions were:

> A person act purposely when it is his/her conscious object to cause such a result.

> A person acts knowingly when the person is aware there exists the high probability that the person's conduct will cause a specific result.

The "result" contemplated in these definitions is violation of the particular statute.

¶26    Based upon his defense theories, he maintains his counsel's failure to present the appropriate jury instructions constitutes ineffective assistance.

¶27    For the following reasons, we conclude that the instructions given by the court "fully and fairly" instructed the jury on the applicable law. *Hovey*, ¶ 10. Additionally, we find no prejudice to Andress in the giving of these instructions.

¶28    The jury was presented with conflicting testimony throughout the trial. Andress maintained he did not intentionally run into Nichols nor did he touch her or speak to her.

9

Nichols' testimony, however, strongly refuted Andress's claims. Appropriately, the District Court expressly instructed the jurors that they were "the sole judges of the credibility . . . of all the witnesses testifying in this case, and of the weight . . . to be given their testimony."

¶29 The jury heard evidence that Andress was forbidden under the order of protection to be within fifteen hundred feet of Nichols. He knew of this prohibition. He nonetheless entered the bar *repeatedly* after he saw her there, *repeatedly* placing himself well within fifteen hundred feet of her. Additionally, the jury also heard from Nichols that Andress approached her, touched her and spoke to her. Under these circumstances, Andress consciously engaged in and was aware of the prohibited conduct knowing it was in violation of the POP. Both his conduct and the result of his conduct could have reasonably led the jury to find him guilty under either the result-based jury instruction argued by Andress on appeal or the jury instruction given. Therefore, the jury instructions given fully and fairly instructed the jury on the mental state required to violate an order of protection. Furthermore, Andress's behavior defies his claim that he did not intend to violate the POP. Had he left the bar after seeing Nichols for the first time and not returned, his claim that he lacked intention to violate the POP may have had greater credibility.

¶30 As to the witness tampering charge, Andress admitted that he wrote the note to Styles but claims he did not give it to Randleas for delivery. Therefore, he had no intent to tamper with a witness. Randleas testified otherwise. Based upon the jury's unanimous verdict of guilt on the witness tampering charge, it appears the jury found Randleas more

10

credible than Andress. If, as believed by the jury, Andress gave Randleas a note to give to Styles instructing Styles to lie under oath, Andress's conduct and the result of his conduct justified his conviction, and instructing the jury solely on the result-based definition would not have changed the outcome.

¶31 As for his claim that his counsel was ineffective for proposing the jury instructions, having determined that Andress suffered no prejudice from the instructions, the second prong of *Strickland* has not been satisfied.

**Nonconforming Judgment**

¶32 Andress next claims that his trial counsel was ineffective for failing to move to conform Andress's written judgment to his orally-pronounced sentence in accordance with § 46-18-116(2), MCA. The lengthy procedural record of this case suggests Andress framed this issue on appeal as an IAC claim because his attorneys did not seek to modify the judgment pursuant to § 46-18-116(2), MCA. However, under the authority set forth in *Kroll*, and other cases addressed below, we will directly review the allegedly nonconforming judgment and, consequently, need not find Andress's counsel ineffective to resolve Andress's claim.

¶33 It is well-established that the oral sentence pronounced from the bench in defendant's presence is the "legally effective sentence and valid, final judgment." *State v. Lane*, 1998 MT 76, ¶ 40, 288 Mont. 286, 957 P.2d 9. As we explained in *Lane*, ¶ 30, after reviewing numerous Montana cases, "holding the oral pronouncement of sentence to be the legally effective sentence is more consistent with our constitutional and statutory provisions." We observed that "[a] defendant is present only when being sentenced from

11

the bench. Thus, a defendant is sentenced *in absentia* when the [written] judgment and commitment order is allowed to control when there is a conflict." *Lane*, ¶ 38.

¶34 Subsequently, in *State v. Johnson*, 2000 MT 290, 302 Mont. 265, 14 P.3d 480, Johnson faced a nonconforming written judgment with new conditions. He argued that "our holding in *Lane* logically implies that, in a strict sense, any portion of a subsequent written judgment that fails to conform, or in some manner conflicts, with an oral sentence is unlawful." *Johnson*, ¶ 17. After substantial analysis, we determined that our *Lane* rule was somewhat "vague" and served to cloud the true issue, which was: "whether a written judgment has, without notice, substantively *increased* a defendant's criminal sentence that was previously imposed in open court in the defendant's presence." *Johnson*, ¶ 24 (emphasis in original). We further stated:

> In determining whether any portion of a judge's subsequent written judgment is unlawful . . . we need only determine first, whether the defendant was afforded the opportunity to respond to its inclusion upon sufficient notice at sentencing, and second, whether that portion of the written judgment substantively increases one of two things: (1) the defendant's loss of liberty; and (2) the defendant's sacrifice of property.

*Johnson*, ¶ 24.

¶35 Later, in *Kroll*, Kroll challenged several sentencing conditions in his written judgment that were not presented during his oral sentence. *Kroll*, ¶ 14. The State responded that Kroll had waived his right to complain about the imposition of such conditions because he had failed to seek modification of the written judgment in accordance with § 46-18-116, MCA. Prior to reviewing Kroll's sentence claims, we addressed the proper interpretation of § 46-18-116(2), MCA. We observed that both

12

parties were assuming that "after the expiration of the 120-day period, the written judgment is *presumed* correct." *Kroll*, ¶ 16. We concluded this was an erroneous presumption and that "[s]ection 46-18-116, MCA, simply provides the parties an avenue for conforming the written judgment to the oral pronouncement of sentence," but it does not supersede or modify our holding in *Lane*, i.e., the orally-pronounced sentence is the legally effective and valid final sentence. *Kroll*, ¶ 18.

¶36 We further explained that "even when a criminal defendant fails to contemporaneously object at sentencing, this Court will accept jurisdiction of a timely filed appeal which alleges that a sentence is illegal or exceeds statutory authority." *Kroll*, ¶ 19. Applying our rule and rationale from *Johnson*, we determined the district court did not err in imposing certain "stock requirements for probationers and individuals subject to a suspended sentence" into Kroll's written judgment. We stated that the inclusion of these stock conditions did not "substantively increase[] the defendant's loss of liberty or sacrifice of property." *Kroll*, ¶ 22.

¶37 We also evaluated non-stock conditions in *Kroll* to determine if they had "a correlation to the crime for which he was convicted," i.e., issuing bad checks as part of a common scheme. *Kroll*, ¶¶ 5, 26. We noted that §§ 46-18-201 and -202, MCA, allowed the court to impose sentencing restrictions or conditions that are "reasonable" and that the court considers necessary "to obtain the objectives of rehabilitation and the protection of the victim and society." *Kroll*, ¶ 28. Under this analysis, we affirmed several "civil restriction" conditions in Kroll's sentence. *Kroll*, ¶ 33.

13

¶38 In *State v. Lucero*, 2004 MT 248, ¶¶ 23-24, 323 Mont. 42, 97 P.3d 1106, we again rejected the argument that the failure to seek modification of a nonconforming written judgment in accordance with § 46-18-116(2), MCA, rendered the written judgment the "valid final judgment." We held in *Lucero*, as we did in *Kroll*, that the stock conditions subsequently added to his written judgment were not unlawful as they did not impose significant restrictions that resulted in loss of liberty. *Lucero*, ¶ 28. However, we determined that specific conditions pertaining to being in bars and casinos or submitting to chemical substance tests did result in a loss of his liberty, did not bear a sufficient correlation to the underlying offense, and were not reasonably related to the objectives of rehabilitation and protection of the victim and society. We therefore ordered those conditions stricken. *Lucero*, ¶¶ 30-31.

¶39 Having established that: (1) failure to seek modification is accordance with § 46-18-116(2), MCA, does not bar this Court from reviewing Andress's written judgment on appeal; and (2) inclusion of stock sentencing conditions does not deprive a criminal defendant of liberty or property and need not be stricken, we turn to the challenged provisions in Andress's written judgment.

¶40 It is undisputed that the first prong of the *Johnson* test has been met. As noted above, because the District Court during sentencing did not orally impose the 26 terms and conditions later contained in his written sentence, Andress did not have the opportunity to respond to the correctness or appropriateness of these sentence provisions. We next determine whether the objected-to provisions must be stricken based upon the criteria set forth above.

14

¶41 As conceded by Andress, conditions 1-9, 17, 20-22, and 24-25 are affirmed under our precedent in *Johnson*, *Lucero*, and *Kroll*. These are stock conditions imposed upon probationers and defendants subject to suspended sentences.

¶42 Conditions 12-16 and 26 prohibit Andress from possessing or consuming intoxicants/alcohol, and entering bars or other establishments where intoxicants are the chief item of sale. Some also require him to submit to routine or random drug and alcohol testing, obtain a mental health evaluation, participate in counseling, and obtain a chemical dependency evaluation. Andress objects to these conditions but at his sentencing hearing he testified:

> I need some counseling, and maybe some additional counseling on the alcohol.
>
> .    .    .
>
> And, I would just hope that the Court would look at the facts of me needing some help in my alcoholism and relationship issues.

Additionally, Andress's counsel further stated:

> [T]he Court would note that in the Defendant's criminal history, there is indication that he may have a substance abuse problem with regard to alcohol, and, certainly, that's not helping the situation with regard to him being able to make good decisions, and that's contributed to some of his decision-making in the past.
>
> He does – as his mother indicated – have a condition which, also, impairs, to a certain extent, his decision-making process, and, probably, alcohol is something that should not be involved, whatsoever.
>
> Mr. Andress has not received any substantial inpatient treatment for alcohol, to my knowledge, and we feel that a five-year Department of Corrections sentence is appropriate in this matter, so that Mr. Andress could be afforded the opportunity to correct his problems with counseling, and with some inpatient treatment for the alcohol issue.

15

This testimony supports the District Court's inclusion of the challenged conditions. Andress specifically requested alcohol treatment, counseling and mental health/relationship counseling. As we stated in *State v. Holt*, 2011 MT 42, ¶ 17, 359 Mont. 308, 249 P.3d 470, we will not put a district court in error for an action in which the appealing party acquiesced.

¶43 The remaining conditions 10, 11, 18, 19 and 23 are also non-stock conditions. They require Andress to pay certain fines and fees, refrain from gambling and entering casinos, and abide by a curfew. These conditions are not sufficiently related to Andress's charges nor are they reasonably related to the objectives of rehabilitation and protection of the victim and society; therefore, we remand with instructions that these conditions be stricken from the written judgment.

## CONCLUSION

¶44 For the foregoing reasons, we conclude Andress's trial counsel did not provide ineffective assistance to Andress with respect to proposed jury instructions. We reverse the District Court's inclusion of conditions 10, 11, 18, 19 and 23 in Andress's written judgment and order that these conditions be stricken upon remand.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ BRIAN MORRIS
/S/ MICHAEL E WHEAT
/S/ JIM RICE