FILED

January 27 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0322

DA 13-0322

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 20

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

AMANDA RENEE BYRD,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 11-07
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Wade Zolynski, Chief Appellate Defender, Kristen L. Larson, Assistant Appellate Defender, Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Micheal S. Wellenstein, Assistant Attorney General, Helena, Montana

            Kristen Pabst, Missoula County Attorney, Andrew W. Paul, Deputy County Attorney, Missoula, Montana

Submitted on Briefs:  December 10, 2014
Decided:  January 27, 2015

Filed:

                     _____
                                Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1    Amanda Byrd entered a guilty plea to a single count of fraudulently obtaining dangerous drugs.  The Fourth Judicial District Court stayed sentencing until Byrd completed a 12-month drug and alcohol addiction treatment program through Rimrock Foundation in Billings, Montana.  Shortly after completing the treatment program, Byrd relapsed, and was taken into custody and subsequently sentenced.  She requested that the District Court give her credit for the time she spent in the 12-month treatment program.  The District Court denied her request. Additionally, the District Court's oral pronouncement of sentence pertaining to counsel fees conflicted with the corresponding provision in the written judgment.  Byrd appeals.  We affirm in part and reverse and remand in part.

## ISSUES

¶2    Did the District Court err in imposing $800 in appointed public defender fees in the written judgment when the oral pronouncement of sentence indicated Byrd was to pay $500 in defense counsel fees?

¶3    Did the District Court err in denying Byrd credit for time served in a residential treatment facility?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4    In 2008, Amanda Byrd was convicted of fraudulently obtaining dangerous drugs, a felony.  In January 2011, the State charged Byrd with three counts of fraudulently obtaining dangerous drugs, second offense.  She was not required to post bail and was released on her own recognizance.  Byrd initially entered a not guilty plea but later

entered into a plea agreement. In exchange for her plea of guilty to a single count, the parties agreed that an appropriate disposition of the case was an 8-year sentence, with 3 years suspended, to the Department of Corrections (DOC). The plea included a recommendation that Byrd be screened for chemical dependency treatment and if appropriate, enter and complete the Elkhorn Treatment Program. Byrd agreed to pay $500 in public defender fees as well as other fines and fees. At the change of plea hearing on June 17, 2011, the District Court offered to help Byrd secure placement in Family Treatment Court (FTC) rather than have her obtain initial treatment from Elkhorn. Following the change of plea, the court ordered a pre-sentence investigation (PSI).

¶5 On September 4, 2011, Byrd entered into a Missoula County Family Treatment Court contract setting forth the terms and conditions of her participation in FTC. Subsequently, Byrd was accepted into the Rimrock Foundation's treatment program in Billings, Montana. On October 31, 2011, the District Count conducted a hearing in which the judge explained the importance of Byrd adhering to the terms and conditions of treatment and the available sanctions for failure to do so. The court then stayed sentencing pending Byrd's successful completion of the Rimrock program. Byrd was accepted into Rimrock's Michelle's House program allowing her two children to live with her at Michelle's House during treatment. The court stated that "upon recommendation of Rimrock Treatment professionals, and with the concurrence of the Family Treatment Court Team, [the District Court] reserves the right to order sanctions, including detention and removal from the program, in the event of rule violations, including use of illegal substances."

¶6 Byrd arrived at Michelle's House on November 3, 2011, and remained in the treatment facility for 12 months. The record does not indicate that she was released from the program for any reason other than completing it. While Byrd was undergoing treatment, the District Court issued monthly orders instructing her to continue following the goals outlined in the FTC contract.

¶7 In December 2012 and January 2013 following her departure from Michelle's House, Byrd appeared before the District Court judge or a standing master on numerous occasions. She had received citations for driving without a license and insurance; she had accepted and filled an opiate-based medication prescription in preparation for dental surgery in violation of court orders; she had lied to the court about the prescription; she had failed to undergo a scheduled urinalysis (UA) at the proper time and location; she failed to complete and submit her application to Elkhorn Treatment Center; and she failed a UA by testing positive for opiates and benzodiazepines. The State moved for issuance of a Bench Warrant which was granted.

¶8 On March 7, 2013, Byrd was sentenced under § 45-9-106, MCA, to serve 8 years with DOC, with 3 years suspended. The court recommended placement at Elkhorn and imposed 29 conditions of probation as well as specific financial obligations. Byrd's counsel requested that Byrd be given credit for the time she was in treatment in Billings but the District Court summarily denied the request. The court issued its Amended Judgment on March 18, 2013. The written judgment indicated that Byrd was to pay $800 in public defender fees.

¶9 Byrd filed a timely appeal of the court's refusal to grant credit for the time she was in treatment and the court's imposition of $800 in defense counsel fees when the plea agreement provided for her payment of $500 for counsel fees.

## STANDARD OF REVIEW

¶10 We review a criminal sentence of incarceration only for legality—that is, whether the sentence falls within the statutory parameters. *State v. Piller*, 2014 MT 342, ¶ 11, 377 Mont. 374, ___ P.3d ___ (citation omitted).

## DISCUSSION

¶11 *Did the District Court err in imposing $800 in appointed public defender fees in the written judgment when the oral pronouncement of sentence indicated Byrd was to pay $500 in defense counsel fees?*

¶12 Byrd argues that the District Court erred when it imposed an $800 defense counsel fee in its written order of judgment when, at the sentencing hearing, the court orally imposed a $500 obligation for such fee. The State concedes this was error on the part of the District Court. "It is well-established that the oral sentence pronounced from the bench in defendant's presence is the 'legally effective sentence and valid, final judgment.'" *State v. Andress*, 2013 MT 12A, ¶ 33, 368 Mont. 248, 299 P.3d 316. We reverse the District Court's order as it pertains to Byrd's payment of $800 for defense counsel fees and remand with instructions that the District Court conform the judgment to the oral pronouncement with a $500 defense counsel fee.

¶13    *Did the District Court err in denying Byrd credit for time served in a residential treatment facility?*

¶14    Relying on § 46-18-403(1), MCA, Byrd asserts that she was entitled to credit for her "incarceration" time in Michelle's House and the District Court's summary denial of her request was reversible error. Section 46-18-403(1), MCA, provides "A person incarcerated on a bailable offense against whom a judgment of imprisonment is rendered must be allowed credit for each day of incarceration prior to or after conviction, except that the time allowed as a credit may not exceed the term of the prison sentence rendered." The crux of Byrd's argument is that because her time in Michelle's House constituted incarceration, she was entitled under the statute to credit for each day spent there once the District Court entered a subsequent judgment of imprisonment against her.

¶15    Byrd argues that she was *ordered* by the District Court to "enter, actively engage in treatment, and complete" the 12-month program at the residential treatment facility. She maintains that the facility had alarms and other security measures in place; she was not allowed to leave the house without authorization; her contact with anyone outside the program was "significantly limited," and the program was tightly structured. Byrd contends that because her freedom of movement and behavior were substantially restrained at Michelle's House, the program constitutes incarceration by definition and within the meaning of § 46-18-403(1), MCA.

¶16    The State counters that the purpose of § 46-18-403(1), MCA, is to protect indigent defendants who are unable to post bail and must remain in custody until they are sentenced, when non-indigent defendants may secure their release and remain free during

that same period. It asserts that because Byrd is not indigent and was never incarcerated and unable to post bail, the general purpose of the statute is not implicated and the statute does not apply. The State requests that if we conclude the statute is implicated, we should remand the matter to the District Court to allow it the opportunity to present evidence showing that Michelle's House is not the equivalent of incarceration.

¶17 The question we must answer is whether Byrd's enrollment in the program at Michelle's House is equivalent to incarceration, thereby requiring a court to allow her credit for each day of attendance in the program pursuant to the provisions of § 46-18-403(1), MCA. We have not previously addressed the question of whether this particular statutory provision would apply to a treatment program such as Michelle's House.

¶18 The term "incarceration" is not defined in the Montana Code. However, § 46-18-201, MCA, sets forth the sentences that may be imposed by a district court. Section 46-18-201(3)(a)(iii), MCA, permits a sentencing judge to impose a sentence that may include "a term of incarceration, as provided in Title 45 for the offense, at a county detention center or at a state prison to be designated by the department of corrections." In that the statute limits incarceration to a detention center or state prison, the legislature apparently does not deem a treatment facility to be a place of incarceration. It follows that if a treatment facility is not deemed to be incarceration, then a person who secures treatment at such a facility is not entitled to credit for the time spent there. As noted, the statute upon which Byrd relies for her argument, § 46-18-403(1), MCA, allows credit only "for each day of incarceration prior to or after conviction."

7

¶19 As noted by Byrd, other states have enacted legislation that permits defendants to receive credit for time served in a residential treatment facility.[1] Montana has not done so. While certainly Montana could choose to do so, the fact remains that "[t]he sentencing authority of a court exists solely by virtue of the statutory grant of power and therefore cannot be exercised in any manner not specifically authorized." *State v. Lenihan*, 184 Mont. 338, 342, 602 P.2d 997, 1000 (1979). We conclude that because the Montana legislature has limited incarceration to location at a county detention center or a state prison, a district court has no statutory authority to decide that placement at a treatment center constitutes incarceration. Therefore, we must reject Byrd's argument that her time spent at Michelle's House constituted incarceration.

## CONCLUSION

¶20 For the foregoing reasons, we affirm the District Court's denial of credit for the time Byrd spent in Michelle's House. We reverse the District Court's amended judgment and remand with instructions that Byrd's payment of defense counsel fees be adjusted to $500 in accordance with the oral pronouncement of sentence.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE

---

[1] N.J. Stat. § 2C:35-14(d); Rev. Code Wash. 9.94A.660.