FILED

07/01/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0450

DA 23-0450

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 136

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JOHN RAYMOND WELZEL,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC-2022-427
Honorable Dan Wilson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Tammy A. Hinderman, Appellate Defender Division Administrator,
Joshua James Thornton, Assistant Appellate Defender, Helena, Montana

      For Appellee:

            Austin Knudsen, Montana Attorney General, Christine Hutchison,
Assistant Attorney General, Helena, Montana

            Travis R. Ahner, Flathead County Attorney, John Donovan, Deputy
County Attorney, Kalispell, Montana

Submitted on Briefs:  May 28, 2025

Decided:  July 1, 2025

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1    John Raymond Welzel appeals from the Eleventh Judicial District Court, Flathead County's June 20, 2023 Judgment and Sentence. Welzel asserts the District Court erred by determining that he was not entitled to credit for time served for the time he spent at the Columbia Falls facility of Recovery Centers of Montana ("RCM") prior to sentencing.

¶2    We restate the issue on appeal as follows:

*Whether the District Court erred when it determined that Welzel was not entitled to credit for time served for his time spent at RCM.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    The State charged Welzel with Assault with a Weapon, a Felony, on November 14, 2022. On April 4, 2023, the District Court held a change of plea hearing at which Welzel pled no contest. At that hearing, the parties stipulated to Welzel's release pending sentencing, noting that he had a bed date at RCM to start substance use treatment. The same day, the District Court ordered Welzel released on his own recognizance. The District Court's Order Setting Bail and Conditions of Release did not require Welzel to attend or complete treatment at RCM; it did require Welzel to reside either at RCM or with his father prior to sentencing. Welzel attended treatment at RCM from April 5, 2023, to May 6, 2023.

¶4    Welzel was sentenced on June 15, 2023. The District Court credited him with 142 days of credit for time served, which did not include the 30 days he spent at RCM.

2

## STANDARD OF REVIEW

¶5 "A district court's calculation of credit for time served is reviewed for legality and we exercise de novo review." *State v. Pillans*, 2025 MT 100, ¶ 14, 422 Mont. 1, 568 P.3d 885 (quoting *State v. Risher*, 2024 MT 309, ¶ 6, 419 Mont. 395, 560 P.3d 1203).

## DISCUSSION

¶6 *Whether the District Court erred when it determined that Welzel was not entitled to credit for time served for the time he spent at RCM.*

¶7 Two statutes govern a district court's calculation of credit for time served at an initial sentencing. Section 46-18-403(1), MCA, titled "Credit for Incarceration Prior to Conviction," provides:

> (a) A person incarcerated on a bailable offense against whom a judgment of imprisonment is rendered must be allowed credit for each day of incarceration prior to or after conviction, except that the time allowed as a credit may not exceed the term of the prison sentence rendered.

> (b) For the purposes of subsection (1)(a), incarceration includes time spent in a residential treatment facility under the order of a court.

Section 46-18-201(9), MCA, provides:

> When imposing a sentence under this section that includes incarceration in a detention facility or the state prison, . . . the court shall provide credit for time served by the offender before trial or sentencing.

¶8 Welzel asserts that the time he spent at RCM constitutes "time spent in a residential treatment facility under the order of a court" under § 46-18-403(1)(b), MCA, so he is entitled to 30 days of credit for that period of time. The State does not contest that RCM is a "treatment facility" for the purposes of § 46-18-403(1)(b), MCA, but argues that Welzel was not in the "treatment facility under the order of the court" because the District

Court's April 4, 2023 order did not require him to attend treatment. Welzel responds that § 46-18-403(1)(b), MCA, does not contain the phrase "attend treatment," so he is entitled to credit under the plain meaning of the statute.

¶9     While Welzel is correct that § 46-18-403(1)(b), MCA, does not contain the phrase "attend treatment," it does require that the time spent in a residential treatment facility be "under the order of the court" in order to get credit for time served. We have not previously had the opportunity to interpret what "under the order of the court" means in this context, but whatever it means it must include some limitation on when a period at a treatment facility counts for purposes of credit for time served. *See Mattson v. Mont. Power Co.*, 2002 MT 113, ¶ 10, 309 Mont. 506, 48 P.3d 34 ("[W]e must endeavor to avoid any statutory construction that . . . does not give effect to all of the words used.").

¶10    Based on the specific facts of this case, we conclude Welzel was not at RCM "under the order of the court." Not only did the District Court not *order* Welzel to attend treatment at RCM, it also did not require him to reside at RCM or impose consequences for failure to do so. All the District Court's April 4, 2023 order did was permit Welzel to reside at *either* RCM *or* his father's house pending sentencing. The District Court was not concerned with what Welzel did at either RCM or his father's house, only that he was resident at either of those two locations until his sentencing. If Welzel had chosen, he might have arrived at RCM, decided he was no longer interested in treatment, returned to his father's house, changed his mind at a later date, returned to RCM, completed a portion of the program, left the facility early, and returned to his father's house again, all without violating the District Court's order. Or he could have chosen to reside the entire time at

4

his father's house. The operative term there is "choice." Welzel was no more entitled to credit for the time he *chose* to reside at RCM than for the time he *chose* to reside at his father's house. Welzel's argument that he was at RCM "under the order of the court" would mean that every defendant released on his or her own recognizance *without* residential restrictions could voluntarily attend in-patient treatment and accrue credit for time served. The District Court did not err when it determined that Welzel was not entitled to credit for time served for the time he spent at RCM.

## CONCLUSION

¶11    The District Court's June 20, 2023 Judgment and Sentence is affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ CORY J. SWANSON
/S/ BETH BAKER
/S/ JIM RICE

Justice Katherine Bidegaray, dissenting.

¶12    I respectfully dissent from the majority's holding. The plain language of § 46-18-403(1)(b), MCA, unequivocally states that "incarceration includes time spent in a residential treatment facility under the order of a court." The District Court's release order explicitly required Welzel to reside at one of only two specific locations pending sentencing: either at his father's home or at Recovery Centers of Montana (RCM), a residential substance use disorder treatment facility. Contrary to the majority's assertion,

5

Welzel's residency at RCM clearly meets the statutory criteria for incarceration credit because the court, in writing, as mandated by § 46-9-110, MCA, made Welzel's residence at his father's home or the residential treatment facility a condition of his release.

¶13 The majority incorrectly imposes additional statutory requirements—that the defendant be explicitly ordered to "attend treatment" and have no choice in whether he spends time in a residential treatment facility—that simply do not exist in the text of § 46-18-403(1)(b), MCA. The statute contains no such language. Its terms are straightforward and require only that the defendant's residence at the residential treatment facility be "under the order of a court." Here, Welzel's residency was indisputably limited by judicial order, precluding him from residing anywhere other than the two explicitly approved locations—one of which would provide credit for time served and the other would not.

¶14 The majority mischaracterizes Welzel's restricted choice between two court-ordered residences as "voluntary." However, Welzel was not free to live wherever he pleased—the court restricted his liberty to residing in a residential treatment facility or at his father's residence. Had he resided at any location other than those expressly approved by the court, he would have violated the conditions of his release, exposing him to sanctions, including potential incarceration. The choice offered by the court does not equate to unrestricted voluntariness; rather, it underscores the direct judicial control and limitation of Welzel's liberty. The statutory credit for time served for time spent in a residential treatment facility likely had the intended outcome the legislature sought by providing Welzel the impetus to choose treatment rather than idly spending time at his

6

father's residence. Even if Welzel made the flip-flopping choice to reside at RCM and then at his father's house, and then at RCM, etc., he would only be entitled to the time he spent at RCM as a credit for time served. Merely because Welzel had the option to choose his residence does not negate the statutory credit.[1]

¶15 The majority's interpretation undermines Montana's clearly articulated sentencing and correctional policy, as set forth in § 46-18-101(2)(d), MCA, which emphasizes the importance of offender rehabilitation and reintegration. Denying incarceration credit to defendants who comply with court-ordered residential restrictions—including treatment at residential facilities—discourages adherence to rehabilitative conditions and, thus, directly contravenes legislative intent.

¶16 In distinguishing this case from precedent, the majority inaccurately relies on *State v. Byrd*, 2015 MT 20, 378 Mont. 94, 342 P.3d 9. *Byrd* involved an individual voluntarily attending treatment without any court-imposed residential restrictions. In sharp contrast, the court, in its release order here, as required by § 46-9-110, MCA, set forth in writing a "restriction[] or condition[] upon [Welzel's] release"—that he reside either at his father's home or RCM. Additionally, *Killam v. Salmonsen*, 2021 MT 196, 405 Mont. 143, 492 P.3d 512, explicitly prohibits sentencing courts from deviating from statutory mandates regarding incarceration credit. The majority's reading improperly narrows *Killam*'s clear guidance by imposing extraneous statutory conditions.

---

[1] It is noted it would be extremely unlikely that a residential treatment facility would continue to cyclically admit, discharge, readmit, etc., a criminally charged individual as such would not demonstrate the requisite commitment to receive treatment required of legitimate residential treatment facilities.

¶17    Finally, *State v. Gudmundsen*, 2022 MT 178, 410 Mont. 67, 517 P.3d 146, emphasizes mandatory credit for incarceration whenever judicial restrictions effectively limit an individual's liberty.  Here, Welzel's liberty was unquestionably limited.  His residential options were strictly circumscribed by a court order, and he clearly spent time in RCM pursuant to the court's release order.

¶18    For these reasons, I would reverse the District Court's denial of credit and hold that Welzel is entitled to incarceration credit for the 30 days spent at RCM.

/S/ KATHERINE M BIDEGARAY


Justices Ingrid Gustafson and Laurie McKinnon join in the dissenting Opinion of Justice Katherine Bidegaray.


/S/ INGRID GUSTAFSON
/S/ LAURIE McKINNON